# CHARLESTON.

Casto v. Board of Education of Ripley Dist.

Submitted January 11, 1894.—Decided January 20, 1894.

1. School-Trustees—Teachers—Construction of Statute.

Under section 13, c. 45, of the Code, as it stood in the edition of 1887, school-trustees had no power as individuals to appoint teachers. Such trustees could only appoint at a meeting of which all the trustees had notice, and at least two of the trustees must concur in the appointment. The appointment must be in writing.

W. A. Parsons, for plaintiff in error cited Code, c. 45, s. 13; 39 Kan. 347; 4 Cush. 494; 35 N. H. 477; 28 W. Va. 232.

Brannon, President:

Action by Casto against the board of education of Ripley district, Jackson county, for failure to allow Casto to teach a school under a contract employing him to do so. The facts are that Casto and Shamblin and Boggess, two of the school trustees, were present at a meeting of the board of education; that the board appointed a trustee in place of Boggess, but the appointee did not qualify that day; that Shamblin and Boggess agreed before leaving the place where the board of education was in session, to employ Casto to teach a school; that Fisher the third trustee, was not present, and had no notice of such meeting; that Casto and Shamblin and Boggess went from the place where the board of education met to Shamblin's house, where on July 15, 1889, Shamblin signed a written agreement employing Casto as teacher; and then the three started to go to Fisher's house, and on the way Boggess remarked that it was not necessary for him to go to Fisher's, as "two trustees were enough to employ a teacher," and did not go further; that Casto and Shamblin went on to Fisher's, and then Fisher and Casto signed the agreement; that, a few days before the time for the commencement of the school,

the secretary of the board informed Casto that a new schoolhouse which was being built would not be completed by the time fixed for commencement of the school, and he would have to defer commencing a few days, to which Casto assented; that after it was completed, Casto informed Shamblin that he was ready to begin teaching, and Shamblin and the other trustees took steps to get a stove for the schoolhouse, but, before obtaining it, the board of education met at the new schoolhouse, and refused to take it off the contractor's hands, and informed the plaintiff that there would be no school taught, and notified the contractor that the board would sue him, as it would be liable to pay Casto for teaching; that later the schoolhouse was burned, and no other house was built; and that Casto was not able to get any other school because it was so late. The said agreement employing Casto was approved by the president of the board of education.

Is the written agreement employing Casto to teach binding on the board of education? Its validity is to be tested by section 13, c. 45, of the 1887 edition of the Code, and not by that section as amended and re-enacted by chapter 60, Acts 1891, found in the 1891 edition of the Code. The act of 1891 made alterations in section 13. How, if at all, such alterations would affect the question we have in hand, it is not proper to say, but I deem it proper to call attention to the fact of amendment of the section.

The statute provided, at the date involved in this case, that the trustees should appoint teachers by written appointment, to be submitted to the board of education, or its president when the board was not in session, for approval. After so giving power to the trustees to appoint, it contained this explicit clause: "But the trustees shall take no action or proceeding relating to the appointment or removal of teachers, or expulsion or suspension of a scholar from school, unless at a meeting of which all the trustees shall have had notice, and when at least two of their number shall be present and concur in such action or proceeding."

It is plain that the important act of appointing teachers under this act must be at a public meeting of which

all the trustees have notice, and the appointment must be by writing, so that we can say it is an act of the board of trustees done in open meeting as an official act, in the face of the public, not by the trustees as individuals, at indifferent places.  At such a meeting the patrons of the school may know what is transpiring, and give the trustees invaluable information touching the morality, capacity, and fitness of the teacher. It is made a safeguard against the selection of improper teachers.  Under this same section, in *Wintz* v. *Board of Education*, 28 W. Va. 227, it was held that the trustees have no power, as individuals, to appoint teachers, and that it could only be done at a meeting of which all the trustees had notice, and at least two of the trustees must concur in the appointment.

In this case there was surely no meeting, within the meaning of the statute, as construed by said decision. Where was the meeting?  At the place where the board of education met?  Of this Fisher had no notice.  It was in no sense a meeting.  Shamblin and Boggess happened there because the board was meeting.  Two trustees must concur in the appointment.  The two trustees present at that meeting, it is said, concurred in the appointment.  They did not legally do so; for while Shamblin, before leaving that place, did sign the agreement, Boggess did not.  Why did he not do so if he finally agreed to the appointment?  The fact that he did not there sign, and the fact that, though he started to go to Fisher's, he excused himself and did not go all the way, tend to show non-concurrence.  The fact that he remarked that it was not necessary for him to go, as two trustees were enough to appoint, shows that he did not intend to be considered as acting in the appointment.  At any rate, he did not sign the agreement, nor any written appointment.  The statute, in terms, requires a written appointment; not an agreement to appoint, but an actual appointment, as a final act, evidenced by writing.

If, under an oral appointment, a teacher could recover for actual service in teaching, it thence does not follow that where he has not taught, so as to maintain a *quantum meruit* for service, he can enforce an oral appointment by re-

covering damages for non-compliance with it. Shall we say that the meeting of Shamblin and Fisher at Fisher's house was the meeting at which the appointment was made, or was it simply to execute or consummate what had been already done at the meeting of Shamblin and Boggess? If the latter is the correct view, then the agreement has the signature of only one of the two who made the appointment at that meeting. If we view the meeting at Fisher's of Shamblin and Fisher as the meeting at which the appointment was made, and to take into consideration the appointment of a teacher as an original proposition, I hardly think we can say Boggess had notice of it as such a meeting. The proceeding, in short, is so irregular that we can not say that the appointment was made and completed at such a meeting as the statute contemplates. To do so we must strain the matter, and introduce a liberality which would more properly be called "looseness," where there is no necessity for such liberality, and a looseness violating the purposes of the legislature. We do not regard the appointment binding on the board of education. Its approval by its president would not validate an appointment made contrary to law; nor would the procuring of a stove for the school, nor the declaration of the board that it would be liable to pay the teacher.

Another point in the case is this: During the taking of evidence, after the plaintiff had given in evidence said agreement and the facts above stated and some others, the court asked the plaintiff's counsel if he could produce evidence different from that which he had already given as to the manner of employing the plaintiff; and, the counsel replying that he could not, the court said it was unnecessary to go further with the evidence on other points, as the court's view was that the plaintiff had been illegally employed; and this is alleged to be error.

From the statement of the facts proven on the trial, we feel sure that the whole case of the plaintiff had been presented, so far at least, as it touched the manner of the appointment of plaintiff as a teacher; and the plaintiff took no exception, and made no objection, to this particular action of the court, but only to its finding upon the facts.

Nor did the plaintiff offer any additional evidence, or even say that he had any particular further evidence, or, indeed, any further evidence; and we do not see how we can find error in this action, such as harms the plaintiff, unless we merely imagine that some evidence was thus shut out, in the absence of even a suggestion that such was the case.

We think with the Circuit Judge that the invalidity of the appointment decides the case against the plaintiff. We are of opinion, therefore, that the finding and judgment of the Circuit Court for the defendant ought to be affirmed.