HOWELL ELECTRIC LIGHT & POWER CO. v. VILLAGE
OF HOWELL.

1. MUNICIPAL CORPORATIONS—CONTRACTS—LIGHTING.
   Under 1 Comp. Laws, § 2908, giving villages general authority
   to contract for lights, the municipality may be held liable to
   pay for lights upon any evidence which convinces the jury
   that the service was rendered and accepted with the expecta-
   tion that it would be paid for.

2. SAME—RENEWAL OF CONTRACT—PRESUMPTION.
   The renewal of a yearly contract for furnishing lights to a
   village will not be conclusively presumed from the acceptance
   of service after the expiration of the contract, where there is
   anything to show a contrary intention.

3. SAME—EVIDENCE.
   Where a village had a written contract with an electric-light
   company for street lights for one year, and at the end of the
   year the company continued to furnish the lights, evidence
   that the company refused to enter into a new contract except
   at the old price and for five years, and that, one month after
   the termination of the contract, the council passed a resolu-
   tion that it would not accept such terms, is admissible to
   show that the parties did not understand a renewal of the
   contract for a year had taken place.

Error to Livingston; Smith, J. Submitted October 15,
1902. (Docket No. 57.) Decided January 6, 1903.

*Assumpsit* by the Howell Electric Light & Power
Company against the village of Howell to recover for
street lighting. From a judgment for plaintiff on verdict
directed by the court, defendant brings error. Reversed.

*Francis J. Shields* (*Edmund C. Shields*, of counsel),
for appellant.
*William P. Van Winkle*, for appellee.

MONTGOMERY, J. This is an action of *assumpsit*
brought by the plaintiff to recover the sum of $953 for

electric lights furnished by said plaintiff to the defendant village for the months of February, March, April, May, and 13 days in June, 1901. The charge for said lights was at the rate of $215 per month.

On the 18th of August, 1890, said village passed an ordinance allowing George L. Beetle and J. H. Andrews a franchise to erect and construct an electric-light plant for the purpose of furnishing lights for the streets of said village. On August 18, 1890, said village entered into a written contract with Beetle and Andrews whereby it agreed to pay $60 per light per year for a period of three years to light the streets of said village. Said contract was to begin on the 15th of October, 1890, and end on the 15th of October, 1893; payment to be made by said village regularly at the end of each month. On the 19th of August, 1891, the parties who secured said franchise and contract assigned their interest and right therein to the Howell Electric Light & Power Company, plaintiff in this action. On November 22, 1893, the common council of said village entered into a contract with the plaintiff company for lighting the streets in said village for a term of five years from the 1st day of December, 1893, until the 1st day of December, 1898, by which contract the village was to pay the plaintiff the sum of $60 per light per year; payment to be made at the expiration of each month. On November 30, 1898, another contract was entered into between the parties to this suit, which was to begin on December 1, 1898, and to expire December 1, 1899; payment to be made at the rate of $60 per light per year at the end of each month. At the end of said contract, namely, December 1, 1899, no new contract was made, but the plaintiff company continued to light the streets of said village the same as before, and at the expiration of each month to present its bill for monthly lighting of the streets, and said bills were audited and paid by said village up to the 31st of January, 1901.

On January 2, 1900, immediately following the expira-

tion of the last written contract, the council of said village passed a resolution expressing dissatisfaction with the lights. On the 31st of January, 1901, a resolution was passed by the village council wherein the council expressly stated that they would not be bound further by lights furnished by said company, and directing plaintiff to cease lighting. Up to the time of the passage of said resolution of the 31st of January, 1901, all bills then owing by said village to said electric-light company were paid and fully satisfied. Some of the officers of the company, including the president and treasurer, were present in the council chamber on the night of the 31st of January, 1901, when the aforesaid resolution was presented and passed. On February 1, 1901, the next day after the passage of said resolution ordering the company to cease lighting, notice was served upon the company, which notice contained the resolution aforesaid. On the 15th of February, 1901, another notice was served upon said company by the clerk of said village. Said company continued to light said village through the months of February, March, April, May, and up to and including the 13th day of June, 1901; and the bills for lighting covering said period were presented to the village council, but were not allowed.

The circuit judge directed a verdict for the plaintiff for the amount of the contract price for the period after notice that the city refused to pay, and before the plaintiff actually ceased to furnish lights. This result was reached by holding that under section 2908, 1 Comp. Laws, the village was not restricted as to the manner in which it might contract; that it was authorized to contract from year to year; and that as it had contracted in writing for the year ending December 1, 1899, and continued to accept like service for more than a year thereafter, the law will imply a promise to pay at the old rate, and a renewal of the contract from year to year.

It may be granted that in a case like the present, where general authority to contract with reference to a subject is conferred, and the manner of executing the power is not

restricted, the municipality may be held to a contract upon any evidence which convinces the jury that the service was accepted on the one hand with an expectation to pay for it, and, on the other hand, was rendered for an expected compensation. 20 Am. & Eng. Enc. Law (2d Ed.), pp. 1157, 1158. Does it follow that the acceptance of service after the expiration of the year resulted at once, and as a matter of law, in creating a new contract for exactly another year? The cases of hiring by the year are cited in support of the view of liability on this basis, and the familiar rule obtaining in case a tenant holds over after his term is also instanced. If we assume that there is an analogy between these cases and one like the present, we should not lose sight of the limitations upon this rule. If there be anything to show a contrary intention, the renewal of the contract for the stated period will not be inferred. See Mechem, Ag. § 212; *Sines* v. *Superintendents of Poor*, 55 Mich. 383 (21 N. W. 428); *Tallon* v. *Mining Co.*, 55 Mich. 147 (20 N. W. 878). In other words, the rule is in no case so unyielding that a court or jury is bound to foist upon a party a contract which no one expected he was engaged to perform. There is reason to believe that just this is what occurred on the trial of this case.

Defendant offered to show that prior to January 2, 1900, a conference was held between the officers of the plaintiff company and a committee of the common council, and that at said conference the plaintiff's officers refused to enter into any contract at less than the old price, and would not renew on those terms for a shorter period than five years; and in the same connection offered a resolution of the council, adopted January 2, 1900, as follows:

"Moved by Wilcox, seconded by Euler, that the following preamble and resolution be accepted and adopted:
" *Whereas*, the question of lighting the streets of Howell has become a serious one, from the fact that the cost of such lighting is a great burden upon the taxpayers, and constantly increasing as new lights are added, with no hope of a decrease under the present circumstances, as the Howell Electric Light & Power Company refuse to further

contract with the village unless the present high rate of $60 per light per year is maintained, and ask, furthermore, for a five-year contract at that price, which would amount to $2,580 per year with our present number of lights, viz., 43, and for the five years, with no additional lights, would amount to the enormous sum of $12,900,—an amount more than sufficient to erect and equip a first-class plant. At the termination of a five-year contract, with the present number of lights, at an expense of $12,900, we would be just where we are at present,—at the mercy of a private corporation or company, who, after receiving more than $20,000 of the people's money for lights, are demanding of us to deliver $12,900 more. Deeming the lights insufficient, and terms exorbitant and unjust to the over-burdened taxpayers of the village, we therefore refuse to again contract with the Howell Electric Light & Power Company on the terms demanded by them; and, from facts obtained after careful research by your committee during the past year, we are satisfied that a municipal electric-light plant, to be run in connection with your waterworks plant, would be feasible, and not only effect a great saving in taxes, but furnish more satisfactory results in lighting:

" *Therefore*, be it resolved by the common council of the village of Howell that we hereby declare it is expedient for said village to acquire, by construction, suitable works and apparatus for the purpose of supplying said village of Howell, and the inhabitants thereof, with electric lights.

" Which motion prevailed."

All this testimony was excluded. We think the ruling was erroneous. Had this testimony been admitted, it would have had weight in determining the question whether the plaintiff and defendant understood that a renewal of the contract for a year had taken place, or was expected to follow from a mere indefinite continuation of the service.

Judgment reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred.