# CHARLESTON.

ORENSTEIN-ARTHUR KOPPEL CO. v. MARTIN *et als.*

Submitted February 22, 1916.    Decided March 14, 1916.

1. ELECTION OF REMEDIES—*Causes of Action—Joinder—Inconsistent Rights.*

Plaintiff conditionaly sold and delivered to defendant 12 two-yard dump cars, and took his several notes, payable at different times, for the purchase price. After defendant had paid the first note, plaintiff sold him 12 larger dump cars and an engine, on like condition, retaining title until all the purchase price should be paid, and they then agreed that the cash already paid and the notes given for the first lot of cars should be retained, as part of the consideration for the second lot of cars and engine; and defendant executed his additional notes to cover the difference in price, and

77 W. Va.

agreed to return to plaintiff, in good condition and at his own expense, the first lot of cars. He returned only two of them; and paid all the notes except the last three, and defaulted in the payment of the last but two. Whereupon plaintiff brought detinue to recover the 10 small cars and the 12 larger cars and engine. *Held:* The small cars were no part of the consideration of the large cars and engine; and plaintiff was not asserting inconsistent rights by suing for all of them in one action. (p. 796).

2. SALES—*Recovery of Property—Right.*

That the negotiation of one of the notes, which he was afterwards required to take up, was not a waiver of plaintiff's right to claim the property. (p. 800).

3. SAME.

That he had a right to recover the property so long as any of the purchase money notes remained in his hands unpaid. (p. 800).

4. SAME—*Recovery of Property Sold—Rendition of Judgment—Condition Precedent.*

That on recovery of the property, defendant has a right to demand that the unpaid notes be canceled and delivered up to him, before judgment. (p. 800).

Error to Circuit Court, Harrison County.

Action by the Orenstein-Arthur Koppel Company against R. T. Martin and others. Judgment for defendants, and plaintiff brings error.

*Reversed and remanded for new trial.*

*Smith & Jackson,* for plaintiff in error.

*Steptoe & Johnson* and *Geo. M. Hoffheimer,* for defendants in error.

WILLIAMS, PRESIDENT:

To a judgment in favor of plaintiff for a part only of the property sued for, and nominal damages for its detention, plaintiff was awarded this writ of error. The action is brought to recover possession of 10 two-yard dump cars, 12 four-yard dump cars and 1 Porter dinkey steam locomotive, sold by plaintiff to defendant Martin on conditional sales contracts.

The alleged error, chiefly complained of, is the court's directing a verdict for defendant, as to the 12 four-yard dump cars and engine. Pending the action said Martin was ad-

judged a bankrupt, and Minter A. Bailey, trustee in bankruptcy, was permitted to come into the suit and make defense. Altogether forty-three separate pleas were tendered, thirty by the trustee and thirteen by the co-defendant Fidelity & Deposit Company of Maryland, all of which were rejected, except the trustee's pleas Nos. 1 and 2, both pleas to the general issue, and the Fidelity & Deposit Company's plea No. 1, which likewise tendered the general issue. R. T. Martin also pleaded the general issue, and filed a special plea averring his bankruptcy, and that the title to the property sued for had vested in the trustee. Issues were joined on the general pleas, and on plaintiff's general replication to Martin's special plea.

That Martin was adjudged a bankrupt August 7, 1913, and was discharged December 23, 1913, is proven by the record. At the beginning of its suit plaintiff gave bond with security, and required the sheriff to take the property into his possession; and shortly thereafter the Fidelity & Deposit Company, which was surety for Martin on his construction bond, gave counter bond, and was permitted to retain possession of the 12 four-yard dump cars and locomotive engine. It did not claim the 10 two-yard dump cars. A verdict was found for defendants as to the 12 four-yard cars and engine, and for the plaintiff as to the 10 two-yard cars, on plaintiff's evidence only, and according to a peremptory instruction by the court; defendant offered no testimony.

In June, 1912, plaintiff, a corporation, doing business in Koppel, Pa., conditionally sold to defendant R. T. Martin, who was then engaged in railroad construction work in Harrison county, W. Va., 12 two-yard dump cars, at the price of $1,466.00, reserving title to itself until they were fully paid for, and took Martin's notes therefor, payable as follows: $300 on August 20th, $500 on September 20th, $500 on October 20th, and $166 on November 20th, all in 1912. Finding the cars too small for his purpose, said Martin, in September, 1912, bought from plaintiff 12 four-yard dump cars and 1 dinky locomotive engine, likewise on condition that the title should remain in plaintiff until the purchase price was fully paid. Upon his failure to make any of the deferred payments, it was expressly stipulated that plaintiff should have

the right to retain all previous payments, as liquidated damages, and to take possession of the property. This second contract was in writing and was duly recorded. Martin agreed ,to pay $1,200 for the engine and $2,160 for the 12 four-yard dump cars—$180 each. It was also agreed that the notes which had been previously executed for the two-yard dump cars should be held and applied on the purchase price of the four-yard dump cars and engine; and Martin then executed additional notes to plaintiff to cover the difference between the prices of the small cars and the larger cars and engine, less $300 which had been paid on the small cars, in the meantime, and for which he was given credit on the second cars. The additional notes were as follows: $300 due September 7th, $694 due December 23rd, both in 1912; $300 due January 23rd, and $600 due February 23rd, both in 1913. These notes together with those previously executed, including the $300 one which had been paid, aggregate $3,360, which is the exact purchase price of the engine and the 12 four-yard dump cars. It is also proven that Martin then agreed to return to plaintiff, at its place of business at Koppel, Pa., at his own expense and in good condition, the 12 two-yard cars. He returned only two of them. Failing to pay the note for $694, due December 23, 1912, this action of detinue was brought, in the following April, to recover possession of the locomotive engine and the 12 four-yard cars and also the 10 two-yard cars. At that time there were due and unpaid three notes, agregating $1,594; all the others had been paid. At the conclusion of plaintiff's evidence, the court instructed the jury to find for the defendant as to the engine and the 12 four-yard dump cars. Pursuant thereto, the jury so found; and found for plaintiff as to the 10 two-yard dump cars, which they valued at $118 each, and nominal damages for their detention; and judgment was entered accordingly.

The chief complaint is against the court's instruction. The court apparently gave it on the theory that the two-yard dump cars were a part of the consideration for the 12 four-yard cars and engine, and that plaintiff had no right to recover both lots of cars; that it was pursuing, in one suit, inconsistent remedies; that, under the conditional sales contract,

it could not sue to recover the property sold and the consideration agreed to be paid for it, at the same time; that a suit for the purchase price of goods, conditionally sold, is inconsistent with the retention of title in the vendor. That a party is forbidden to pursue inconsistent remedies seems to be a well recognized rule of law, and there are numerous cases holding that, where a vendor retains title to the goods sold until all the purchase money is paid, he must elect either to sue for the price, or to sue for the goods, and can not do both; also, that having once made his election, he is estopped to pursue the other remedy. The theory is that a suit to recover the price of goods conditionally sold, is an implied admission of defendant's title to them, and a waiver of plaintiff's title retained; and that a suit for the goods is a virtual rescission of the sale, leaving the promise to pay without any consideration to support it. The following are some of the authorities supporting this proposition: *Frisch* v. *Wells*, 200 Mass. 429, 23 L. R. A. (N. S.) 144; *Kelly Springfield Road Roller Co.* v. *Schlimme*, 220 Pa. 413, 123 Am. St. Rep. 707; *C. W. Raymond Co.* v. *Kahn*, 124 Minn. 426, 51 L. R. A. (N. S.) 251; *Terry* v. *Munger*, 121 N. Y. 161; *Conrow* v. *Little*, 115 N. Y. 387; *Henry Pels & Co.* v. *David M. Oltarsh Iron Works*, 129 N. Y. S. 371; and *American Process Co.* v. *Florida White Pressed Brick Co.*, 56 Fla. 116, 16 Am. & Eng. Ann. Cases 1054. Numerous cases bearing on this subject are collected in a note to the case last cited, in 16 Am. & Eng. Ann. Cases, at page 1057; and in a note to *Frisch* v. *Wells*, *supra*, in 23 L. R. A. (N. S.) 144.

But we are not here called upon to determine whether or not the principle announced by the above decisions is the rule of law in this State; there are a few cases apparently holding a contrary doctrine. But they seem to be confined to jurisdictions in which conditional sales contracts are regarded in their nature as chattel mortgages. This court has not so regarded them. *McGinnis* v. *Savage*, 29 W. Va. 362; and *D. H. Baldwin & Co.* v. *Van Wagner*, 33 W. Va. 293. Assuming, therefore, but not deciding that election of remedies is applicable to conditional sales, and that the pursuit of one remedy is the waiver of another, still the facts proven do not warrant the application of the rule to the case in hand.

This is the first action of any kind plaintiff has brought to enforce any of its rights growing out of the contracts of sale to Martin; and, in this suit, it sought to recover possession of both the two-yard dump cars and the four-yard dump cars and dinkey locomotive. There is no controversy about the fact that plaintiff, in each sale, retained title to the property until all the purchase price should be paid. The evidence does not support the theory of defendant's counsel, that the first lot of cars was a part of the consideration for the engine and the second lot of cars. According to the evidence, the notes which had been given for the purchase money of the first lot were to be applied, *pro tanto,* to the purchase price of the second lot of cars and the locomotive; and additional notes were then executed for the difference between the price of the two lots, less $300 which had been previously paid on the first lot, and which was credited on the price of the second; and the purchaser was to return to plaintiff at Koppel, Pa., at its own expense and in good condition, the two-yard dump cars. He returned only two of them. All the notes plaintiff then held were in consideration of the second lot of cars and engine. There is no conflict in the evidence. Two of plaintiff's agents, one of whom consummated the deal with Martin, are the only witnesses, and their testimony is clear and leaves no room to infer that the first lot of cars was any part of the consideration for the second lot and the engine. If that was the agreement, why were the notes first given not canceled and surrendered, and why were additional notes taken, which, together with the cash payment, foot up the exact amount of the purchase price of the four-yard cars and engine? We think it is clearly shown that the notes, and not the two-yard cars, were the consideration for the second lot and the engine. The transaction is inconsistent with any other theory than that the first lot of cars was to be surrendered to, and immediately became the unqualified property of plaintiff. The second sale of cars, and the agreement then made, canceled and rescinded the sale of the two-yard cars; and, if plaintiff had seen fit to do so, it could have recovered possession of them at any time thereafter, without waiting for default in the payment of any note. As to them, the evidence shows that Martin was merely a gratuitous bailee.

He was under obligation to return them to plaintiff, at his expense, in good condition. As to the engine and four-yard dump cars, plaintiff had a right to maintain its action on its contract, whereby it retained title, until it should receive ''the full purchase price thereof in cash,'' default being clearly proven. The contract also expressly gave plaintiff the right to retain all previous payments ''as liquidated damages.'' The fact that plaintiff has title and right of possession to the different classes of property, on different grounds, does not estop it from suing to recover all in one action.

Default was made in payment of the note for $694, payable on December 23, 1912, at the Empire National Bank of Clarksburg, W. Va. It had been forwarded by the Bank of Pittsburg, Pa., to the Empire National Bank of Clarksburg, and was there protested. It is insisted that, by indorsing this note to the Bank of Pittsburg, plaintiff elected to pursue its remedy to collect the purchase price, and is thereby estopped to recover the property. *Winton Motor Carriage Co.* v. *Broadway Automobile Co.*, 65 Wash. 650, 37 L. R. A. (N. S.) 71, is relied on to support this contention. In that case, as in this, the note was not paid and had to be taken up by the obligee. The court there held that, by the transfer of the note, the vendor had elected to treat the title to the property as having passed to the vendee. But there the note represented all that was remaining of the purchase price; whereas, in the present case, there were two notes yet remaining in the hands of plaintiff. So that, even if it were conceded that the case cited correctly propounds the law, (which we do not, because it is not necessary to a decision of this case), still it would not be controlling here. The transfer, or even collection by suit, of one or more of the notes is not inconsistent with plaintiff's retention of title as long as he holds any of them. Voluntary payment of all but the last note would not defeat plaintiff's title until ''the full purchase price'' was paid. *Haynes* v. *Temple*, 198 Mass. 372. In that case there was a conditional sale of horses at the price of $400, for which the purchaser executed his three notes as follows: $200 payable in one month, $100 in two months and $100 in three months, and the horses were then delivered to him. He defaulted in payment of the first two notes, and

the seller sued on them, recovered and collected it by execution. The purchaser failed to pay the third note also, whereupon the seller took possession of the horses. The purchaser then brought an action of tort for their conversion, claiming that, by his election to sue on the first two notes, the seller was estopped to reclaim the property. But the court held that the title did not pass until the price was fully paid, the parties having so agreed, and the seller was not estopped to reclaim the horses, on default in payment of the last note. In that case, as in the one now before us, it was clearly the intention of the parties, gathered from the language of their contract, that the title was to be retained until *all* the purchase price was paid. Upon the uncontroverted evidence, we fail to see why plaintiff was not permitted to recover all the property sued for.

Whether or not the unpaid notes should have been tendered to defendant, as a condition precedent to plaintiff's right to recover the property, is not raised by the pleadings or discussed in briefs of counsel. But, as the case is to be remanded for a new trial, the question is pertinent. Plaintiff, having elected to retake the property, it follows that defendant is not thereafter liable for the unpaid portion of the purchase money. The authorities so hold, although they are not harmonious in their reasoning. 1 Mechem on Sales, sec. 620. A sufficient reason would seem to be that the reclamation of the property destroys the consideration for the promise to pay, and renders it a *nudum pactum.* Martin had expressly agreed that, in case of default in payment, he would forfeit whatever amount he had paid, but he was not bound to pay any notes unpaid at the time of the recaption of the property. On the question, whether a surrender of the unpaid notes is a condition precedent to recovery of the property, there is a dearth of authority. The United States Supreme Court, in *Segrist* v. *Crabtree,* 131 U. S. 287, sustaining a charge given by the lower court to the jury to that effect, seems to hold in the affirmative. There nothing appears to have been paid; notes were executed for the entire purchase price of the cattle and horses, and the purchaser defaulted in their payment. The terms of the contract were disputed, and the question, whether the notes were given and accepted as absolute pay-

ment, was submitted to the jury upon an instruction which, in effect, told them, that if the purchasers gave their notes as payment, although they were accepted by the seller as conditional payments only, yet they were prima facie evidence of payment, and the seller, "whilst holding said notes, could not proceed to take possession of the said cattle and horses as their own." The most seriously controverted fact in the case was, whether the sale was absolute or only conditional; and it is clear, from Justice Harlan's opinion construing the instruction, that the retention of the notes was being considered in its evidential character as tending to prove an absolute sale, rather than as affecting the procedure. If the notes were given and accepted as *absolute* payment, it follows of course that the seller could not retain full payment and recover the property. In such case there would have been no conditional sale, and his remedy would have been by action on the notes, or for a rescission of the contract. In the present case, all doubt respecting the character of the contract of sale is removed by the terms of the written agreement. Here the notes are only evidence of payments to be made, and not payments. We find no other case holding that a surrender of unpaid notes is a condition precedent to recovery of property conditionally sold. The following cases hold that such surrender is not necessary. *Kirby & Co.* v. *Tompkins,* 48 Ark. 273; *National Cash Register Co.* v. *Ferguson,* 55 N. Y. Sup. 592; and *C. W. Raymond & Co.* v. *Kahn,* 124 Minn. 426, 145 N. W. 164, 51 L. R. A. (N. S.) 251. Although expressly deciding that the return of the unpaid notes, or the offer to return them, is not a condition precedent to the right of the seller to maintain his action for the property, the Minnesota supreme court holds, in the case last cited, that they should be returned before judgment, if demanded. Such also seems to be the opinion of the supreme court of New York in the case above cited. There is strong reason for applying that rule in the present case. The notes are negotiable, and if they have passed, in due course, to innocent holders for value the purchaser would be liable to pay them, notwithstanding the seller's election to recover the property. Hence he has a right to demand that they be surrendered to him before judgment against him for the property.

Exceptions were taken to the rejection of defendants' special pleas, but there are no cross-assignments, and we need not pass upon those exceptions. However, if there had been any proof to show that the first cars bought were the consideration for the second ones purchased, probably a special plea would be necessary to a declaration counting for the recovery of both, in order to entitle defendants to the benefit of it. The question may not be pertinent on the general issue.,

The judgment is reversed, the verdict set aside and the case remanded for a new trial.

POFFENBARGER, JUDGE *(concurring)*:

Judges LYNCH and MASON and I are firmly of the opinion that, under a contract of the character of the one here involved, surrender of the unpaid notes, or indemnity against liability thereon, if the vendor has negotiated them, is a condition precedent to recovery of the property by judicial process, after default in payment. This view is predicated on our interpretation of the contract as to the intent of the parties, and not on any rule of law or result of legal process. As to rights respecting the unpaid notes the contract is silent. It does not say in terms, whether, after recaption of the property, there shall be any liability on them or not. Here, as in other cases of uncertainty as to intent and purpose respecting a particular, limited and subordinate phase or feature of a contract, it is necessary to consider the general scope and purpose thereof, the situation of the parties and all the circumstances, as well as the reason, equity and fairness of the results. Could it have been the intention of the purchaser that, in the event of failure to pay an installment of the purchase money and consequent loss of the property, he should be required to pay the remaining installments? The inequity of such a result constrains the courts generally to answer in the negative, and to relieve on the ground of failure of consideration. It is just as easy to say there is no liability because the parties never intended it, and no legal rule inhibits adoption of that view. We regard the contract as one providing for a qualified or partial rescission, at the option of the vendor, in case of default in payment. Under the

broad right of contract, their power to make such a provision is manifest. They are not held by law to any particular form of rescission or adjustment of their rights. Though rescission, as legally defined, requires restoration of the *status quo,* nothing in the law precludes a modification of it by contract, if the parties desire only partially to adopt the principle and terminate their contract and adjust their rights by a partial, modified or qualified rescission. 6 R. C. L., Title Contracts, sec 318, p. 936. The rule is one of construction, based upon presumed intention, not one of law limiting or controlling intention.

This conclusion harmonizes too with a well settled rule of contsruction. On default, there is right to terminate the contract by a forfeiture clause. That clause forfeits, in terms, only the payments actually made. It does not say the vendee shall lose, in addition to the money actually paid, the sums represented by the unpaid notes, or any part thereof. Forfeiture clauses are always strictly construed and confined, in their operation and scope, to the letter thereof. Nothing is ever added by way of mere intendment. Elliott on Contracts, sec 4111. To say the vendor may hold the notes after recovery of the property and not be able to enforce payment thereof, is to state a contradictory proposition, which, to a mind not versed in legal technicality, would be absurd. And its plausability rests altogether upon the theory of a supposed legal rule or principle which makes the parties assent to something by way of forfeiture, that they have not expressed. The contract says nothing about remedies, procedure or legal rules or principles. None of them can be made a part of it otherwise than by addition to its terms, on the assumption of intention to adopt them.

Contracts are to be so construed as to make them operate justly and equitably, when their terms will permit such an analysis and application, and always so as to avoid absurdities and inequitable results, when that can be done without violation of the terms or departure therefrom. Negotiable notes given under a contract of this kind and held by *bona fide* purchasers thereof, would have to be paid by the maker, and, if he would then have right of recourse upon the vendor,

the latter might be utterly insolvent. In such case, the forfeiture might be immensely enlarged. The notes are not the contract. They constitute only a part of it, and the rights of the parties are determined by the entire contract.

*Reversed and remanded for new trial.*