# CHARLESTON.

### J. WARREN CADE V. CITY OF BELINGTON.

Submitted September 24, 1918.    Decided October 1, 1918.

1. MUNICIPAL CORPORATIONS—*Contracts—Action by Council.*

   As a general rule, a municipal corporation is not bound by a contract made without corporate action by the council, duly assembled, manifested by an order entered of record in the minute book containing a notation of its proceedings.  (p. 613).

2. SAME—*Implied Contracts—Knowledge of Council—Validity.*

   But if the municipality has power to contract therefor by express contract, and the contract is not against public policy, and there are no statutory or charter provisions limiting the mode of execution of a like express contract, it will be liable on an implied contract where, with the knowledge and consent, express or implied, of the members of the council, it has received benefits rendered at the instance and request of its duly authorized agents acting for and on its behalf, either in the absence of any contract or where the express contract is invalid because of mere irregularities.  (p. 617).

Error to Circuit Court, Barbour County.

Action by J. Warren Cade against the City of Belington. Judgment for defendant, and plaintiff brings error.

*Reversed and remanded.*

*C. M. Murphy,* for plaintiff in error.

*A. M. Cunningham,* for defendant in error.

LYNCH, JUDGE:

By this writ to a judgment pronounced by the circuit court upon a verdict directed for defendant in an action brought before a justice to recover the value of services rendered by plaintiff in guarding smallpox patients resident within the defendant city, it is only necessary to say whether the evidence is sufficient to sustain a verdict for plaintiff, had one been rendered in his favor.

There was no order of the city council and no express contract authorized by the council or by its positive direction employing plaintiff to perform the services for which he

sues. He was engaged and directed to act as a watchman to avoid the spread of the contagion or infection among other residents of the municipality. That he performed the work he was directed to do and that the account was reasonable seems to be established by the proof introduced upon the trial. Apparently the result of the trial was due to the conception that without corporate action by the council duly assembled, manifested by an order entered of record in the minute book containing a notation of its proceedings, no liability devolved upon the city. The observance of that requirement, as a general rule, is a prerequisite of a valid contract binding the municipal corporation. But it is not universally and exclusively operative and preclusive of the right to recover where services are performed for the corporation or goods furnished to it at the instance and request of its duly authorized agents acting for and on its behalf. In that event the law may afford relief upon an implied contract and promise for reimbursement.

Such an implication was enforced in *Boise Water Co.* v. *Boise City,* 230 U. S. 84, 96. The franchise granted by the defendant required plaintiff to furnish without charge water at the hydrants for use in case of fire. Later the free use provision was eliminated by a general law applicable alike to all municipalities within the state and allowing water companies to charge reasonable rates for such use. Sometime afterwards the municipal corporate authorities entered an order declining to pay after the date of the order the rate agreed upon between commissioners representing it and the city authorities, or any compensation for the use of the hydrant water furnished after that date with the knowledge and upon the acceptance of the officers and agents of the corporation, and the water company was allowed to recover. 3 McQuillan, Municipal Corporations, sec. 1262, page 2749, says: "Thus if the municipality has power to contract therefor by express contract, and the contract is not against public policy, and there are no statutory or charter provisions limiting the mode of execution of a like express contract, it will be liable on an implied contract where it has received benefits, either in the absence of any contract or where the ex-

press contract is invalid because of mere irregularities.'' In *Kramrath* v. *Albany*, 127 N. Y. 575, the defendant was held liable on a *quantum meruit* where it enjoyed the benefit of the work performed, notwithstanding the absence of any formal contract. Where a contract within the power of a municipal corporation is set aside for irregularities, there may be recovery as on a *quantum meruit* against such corporation for work and materials furnished under such contract before legal attack. *Wentink* v. *The Board etc. of Passaic County*, 66 N. J. L. 65.

The same liability arises where public printing is done for a city after the expiration of the contract therefor and without a new agreement, but under each separate order given by the city authorities. *People ex rel. Hausauer-Jones Printing Co.* v. *Zimmerman*, 109 N. Y. Supp. 396. See also *Miles*. v. *Holt County*, 86 Neb. 238. Likewise where a contract was: invalid because made at a special meeting of the common. council without legal notice to all the members, but it appeared to the court to be fair and reasonable and within the scope of the corporate powers, and the other party had completed the work and defendant accepted the benefits. *Land Co.* v. *Jellico*, 103 Tenn. 320. In a Vermont case, *District of Hardwick* v. *District of Walcott*, 78 Vt. 23, it is said in effect that no stronger proof is required to establish an implied contract to bind a municipality than to bind an individual. To the same effect are *Austin* v. *Bartholomew*, 107 Fed. 349, 355; *Brush Electric Light Co.* v. *Montgomery*, 114 Ala. 435; *Howell Electric Light Co.* v. *Howell*, 132 Mich. 117; *Tucker* v. *Virginia*, 4 Nev. 20. Thus it seems that whenever the corporation may bind itself by an express contract, it may also bind itself by an implied contract unless there is some provision in its charter or the law controlling the exercise of its powers requiring it to contract in some definitely prescribed manner.

Some authorities there are that go so far as to assert liability in similar cases even upon contracts executed in excess of the authority conferred upon municipalities, where the contract, if executed, will not increase the burden of taxation

and the municipality has received the benefits. Whether this is a sound proposition or not it is unnecessary to say.

Substantially the undisputed facts are these: Price, the sergeant of the defendant city, having knowledge that there were in the city several homes whose occupants were infected with smallpox, applied on behalf of the corporate authorities and at the direction of the acting mayor to the plaintiff to guard the property and prevent the occupants from commingling with other residents of the city, and promised to advise him next morning whether the authorities would consent to his employment if he would perform that service. Price returned as agreed and informed plaintiff that the arrangement was satisfactory and he then undertook the work. That day Dr. Strother, a member of the city board of health, and F. M. Wright, its secretary, gave plaintiff orders and directions how to guard and take care of the patients. Viquesney, the mayor, told plaintiff "to watch and keep people off the sidewalk from the premises where these people were sick", and promised to furnish him wood for fire that night and during cold weather, as did also Wilson, the recorder, who, after plaintiff said he would quit because he could not keep warm without a fire, ordered the wood delivered and it was delivered, and plaintiff, together with Wright, secretary of the board of health, fumigated the residences after the quarantine was lifted. Wilson, the recorder and ex officio mayor in the absence of Viquesney, says he directed plaintiff to perform guard duty at the infected premises and frequently saw him there early and late several days during the period covered by the account; and when asked whether he considered the plaintiff's charge reasonable, replied: "My recollection is that he (Cade) produced or talked about a bill before the council and they wanted to talk over the matter. We really were not sure who had it to pay, the city or the county, and they said at the time that he should take the matter up with the county court, and we thought at the time that the bill was a little high, but after they considered the matter over and the hours in that and all, they thought it was not much out of the way; that possibly it was worth it." And also when asked whether the council knew at the time

that Cade was performing the services to protect the city, replied: "Yes it was the understanding of the council and the mayor and all of us that he was out there guarding the smallpox," and further that "there were no objections until the bill was brought in", and then only as to who should pay for it, the city or the county.

There can be no doubt that defendant had the power to enter into such an agreement with plaintiff. Both the charter of the city of Belington, sec. 28, ch. 1. Acts 1905, and sec. 28, ,ch. 47, Code, provide that the council shall have plenary power and authority "to prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome." But in addition to that express power, the municipal corporation has inherent power to protect the health of those within its jurisdiction. *Thomas* v. *Town of Mason,* 39 W. Va. 526.

The cases relied on by defendant, *Pennsylvania Lightning Rod Co.* v. *Board of Education,* 20 W. Va. 360; *Wintz* v. *Board of Education,* 28 W. Va. 227; *Casto* v. *Board of Education,* 38 W. Va. 707; *Honaker* v. *Board of Education,* 42 W. Va. 170, and *Cunningham* v. *Board of Education,* 53 W. Va. 318, to sustain the position taken to show want of liability except upon an express contract duly authorized and executed for and in behalf of the municipality, have no controlling or persuasive effect upon the question of the liability of the defendant. In the Board of Education cases cited, the court refused to grant relief to plaintiff because in each case the contract involved was entered into in disregard of the express prescription of the statute in force at the time the alleged causes of action arose; the statute being that the board of education "shall do no official business except when assembled as a board and by due notice to all members," thereby imposing a positive statutory limitation on the mode of execution of contracts. Furthermore, in the Pennsylvania Lightning Rod and Cunningham cases, supra, there was formal action by the board of education expressly disavowing the prior informal agreement, with notice thereof to plaintiff; and in the Honaker case the element of bribery entered.

Nor does *Limer v. Traders Co.,* 44 W. Va. 175, govern this case.   There the directors of the defendant corporation had already made a contract with a firm for furnishing material and completing their hotel.   Hence, though plaintiff claimed to have furnished some material for the building under a subsequent agreement between him and one of the directors, defendant was justified in inferring that it was furnished, if at all, under an agreement between plaintiff and the firm which already had the contract for the building.   The court said: "If it (defendant) had known that it was not being furnished pursuant to that contract, then it might be charged, but not otherwise."

Our order, therefore, will reverse the judgment and remand the cause for a new trial.

*Reversed and remanded.*