# CHARLESTON.

UNION WATER METER Co. v. TOWN OF NEW MARTINSVILLE.

Submitted February 11, 1919.    Decided February 25, 1919.

1. MUNICIPAL CORPORATIONS—*Purchase by Unauthorized Agent—Ratification—Intra Vires.*
    A municipality is bound by a contract of purchase of property on its behalf by an unauthorized agent, if with knowledge thereof it performs acts amounting to ratification, the contract being *intra vires.* (p. 482).

2. SAME—*Unauthorized Purchase by Agent—Ratification.*
    In such case ratification may be implied either from acquiescence after full knowledge, or from subsequent acts and conduct by the municipal authorities inconsistent with any other theory. (p. 482).

3. SAME—*Purchase of Goods by Unauthorized Agent—Ratification.*
    Where water meters are sold and delivered to a city owning its water plant and system, upon the order of one not authorized to act on its behalf, and it thereafter receives them and pays for their installation, by an order drawn upon its treasury, it thereby impliedly ratifies the contract of purchase, and is bound by its terms. (p. 483).

Error to Circuit Court, Wetzel County.

Action by the Union Water Meter Company against the Town of New Martinsville. Judgment for defendant, and plaintiff brings error.

*Reversed and rendered.*

*M. H. Willis,* for plaintiff in error.

*H. H. Rose,* for defendant in error.

WILLIAMS, JUDGE:

Plaintiff brings error to a judgment for defendant, rendered upon its demurrer to the evidence in an action of assumpsit to recover $687.06 and interest thereon, the price of certain water meters which plaintiff, a corporation, alleges it sold and delivered to defendant, a municipal corporation, at its special instance and request, to be paid for in thirty days from the 2nd day of November, 1911. Defendant's demurrer to the declaration was overruled, thereupon it gave notice of recoupment, pleaded the general issue and the statute of limitations, and filed two other special pleas, in one of which it averred that, at and before the time of making the purchase, plaintiff falsely and fraudulently represented to it that said water meters would not corrode; that they were of sufficient strength to endure the pressure of water in defendant's lines or pipes without leakage; that they would correctly and accurately measure and register the quantity of water flowing through the pipes to which they should be attached, knowing at the time of said representations that they were untrue and that defendant relied upon said representations as being true and was thereby induced to make the purchase. The other special plea sets up a warranty by plaintiff of the same facts alleged to have been falsely represented as true. It further alleges defendant notified plaintiff of the alleged defects in the meters and tendered them back to it before this action was brought. Issues were joined on all of said pleas, and the case was tried upon evidence introduced by plaintiff only, defendant offering none. No resolution is shown to have been adopted at any meeting of the municipal council authorizing anyone as its agent to purchase the meters, or obligating it to pay for them. Plaintiff introduced the following letter under date, "New Martinsville, September 13, 1911," signed by G. A. Harman and addressed to plaintiff:

"Some time ago, your agent was here in interest of your company. We were not ready to buy meters at that time but I told him that I would notify the company when the city took steps towards getting meters. We have about decided to put meters in. Would like for your agent to come

here and meet the city council. Let us know when he can come and the council will meet him. We would prefer to meet him some evening as we have more time in the evening. Have him bring sample meter with him.''

Mr. Harman appears to have then been president of the city's water board. Plaintiff proved that it shipped the meters upon the written order of George Grall, clerk of the city water board, after they had been carefully tested at the factory and found to be in good condition, and that they were received, installed and used in the water system; that the only complaint was by the same clerk who wrote, under date of January 10, 1912, the following letter to the plaintiff:

''One of the 2 inch meters would not register and on examination found disk bent and one of the 4 inch meters has also 'stoped' running kindly advise us what to do would like to know if you can give us any information as to where we can get a regular meter book. Thanking you in advance.''

Plaintiff promptly replied, explaining what it supposed was the cause of the trouble and requested that the two meters be returned for inspection and repairs, free of charge if it should be found to be on account of defective material. They were never returned. At the same time a meter reading book was forwarded to Mr. Grall. Notwithstanding numerous letters were addressed and mailed to the city water board of New Martinsville demanding payment of the account, no further complaint was made.

Edward Huffman, a plumber, swears he installed the meters between the 10th and 17th of November, 1911; that he was employed by Mr. Faucet superintendent of the water works and was paid for the work by the city, ''by regular order by the town council and paid out of the treasury.'' No objection was made to any of the foregoing evidence. Upon demurrer to the evidence, we think a fair inference to be drawn therefrom is that the municipality of New Martinsville owned and controlled the water works, and that George Grall, clerk of the city water board, was authorized by the municipal council to purchase the meters, or if not so authorized, the contract of purchase was made by him on behalf of the city, and, by paying Huffman for their installation,

the city ratified the unauthorized contract. The contract was *intra vires,* and in such case a municipality may ratify an unauthorized contract just as an individual or a private corporation may do; and ratification may be inferred from acquiescence after knowledge of the facts or from conduct inconsistent with any other supposition. 2 Dillon on Munic. Corp., (5th ed.), Sec. 797; 3 McQuillan on Munic. Corp., Sec. 1255; 15 C. J. 544; 28 Cyc. 677; *Jones* v. *School District,* 110 Mich. 363. *Diamond Power Specialty Co.* v. *City of West Point,* (Ga.), 75 S. E. 903, was a case very similar to the one now before us, and the court there held that, "Even if the chairman of the electric committee of a city council had no authority to purchase blowers for the city electric plant, yet where the blowers were accepted and installed, and operated for nine months, the city would be estopped from setting up want of authority to execute the contract." See also *Goshorn's Ex'rs* v. *County Court,* 42 W. Va. 735, wherein Judge HOLT, in discussing the liability of the county court, in an action against it for the price of hogs, purchased by two members of the county court at a time when the court was not in session, says at page 741: "Having received the benefits, it is bound in conscience to pay, and will not be heard to say that the original agreement was not made by a person legally authorized to contract."

If the contract and its ratification were not proven, still the city would be liable, on an implied contract, to pay what the meters were reasonably worth, the agreement being one which the city could lawfully make in a formal manner and it having received the benefits therefrom. In such case the city would be estopped to deny its liability, on a *quantum valebant,* for the reasonable worth of the property. *Goshorn's Ex'rs.* v. *County Court, supra;* and *Cade* v. *City of Belington,* 82 W. Va. 613, 96 S. E. 1053; and authorities above cited. Cases like the present are exceptions to the general rule that municipalities are bound only by the action of their constituted authorities when assembled.

But there is sufficient evidence, we think, to show a ratification, and the contract must be regarded as ratified according to its terms, which includes the time of payment.

The bill was payable in thirty days from the day of delivery, which made it fall due December 2, 1911. Limitation did not begin to run until then, hence this action, brought on the 18th of November, 1916, was within time to prevent the bar of the statute, the limitation being five years.

Plaintiff retained title to the meters until they were paid for, and because thereof, counsel for defendant insists that it cannot maintain this action. This is a *non sequiter*. Plaintiff retained the title for its security, and, having elected to bring this action for the price of the meters, it thereby treated the title as vested in defendant, which it had a right to do, and waived its right to sue in detinue for the goods. Plaintiff has made its election and is bound thereby. *Orenstein-Arthur Koppel Co.* v. *Martin*, 77 W. Va. 793.

The judgment will be reversed and, the case having been submitted upon a demurrer to the evidence, a judgment entered here for plaintiff for the amount assessed by the jury, to-wit, $926.67 with interest thereon from the 28th day of September, 1917, the date of the verdict.

*Reversed and rendered.*