### BERLIN IRON BRIDGE CO. v. CITY OF SAN ANTONIO.

(Circuit Court, W. D. Texas, San Antonio Division. May 19, 1894.)

No. 522.

1. MUNICIPAL CORPORATIONS— CONSTITUTIONAL RESTRICTIONS ON CREATION OF DEBTS—PROVISION FOR INTEREST AND SINKING FUND.

A contract whereby a city agrees to pay a certain sum for the erection of a bridge—one-half on delivery of the material, and the remainder on completion and acceptance of the bridge—creates a debt, within the provisions of Const. Tex. art. 11, §§ 5, 7, that no city shall create any debt unless at the same time provision be made by taxation for payment of interest and creation of a sinking fund, and is therefore invalid if no such provision is made at the time of its execution, notwithstanding payment of the contract price is secured by the proceeds, paid into the city treasury, of bonds issued for the purpose, in accordance with pro-

visions of the city charter requiring creation of a fund for payment of interest and as a sinking fund, by special tax.

2. SAME—CURRENT EXPENSES.

The debt created by such contract cannot be regarded as a current expense of the city, payable out of current revenues.

3. SAME—IMPLIED CONTRACT.

Where such contract is void, as contravening the provisions of the constitution, the contractor cannot recover from the city the value of the bridge, as upon an implied contract.

This was an action by the Berlin Iron Bridge Company against the city of San Antonio on a contract for the erection of a bridge. Plaintiff's petition contained the following allegations:

First. That plaintiff is a private corporation duly incorporated under the laws of the state of Connecticut, resident and doing business in said state of Connecticut, and a citizen of said state.

Second. That defendant, the city of San Antonio, is a municipal corporation duly incorporated by a special act of the legislature of Texas approved August 13, 1870, and which said act has been subsequently, at different times, amended by the legislature of the state of Texas, by acts passed amendatory to said act above referred to, and that said city is now, and was on the 1st day of November, 1890, and has ever since been, a city of over ten thousand (10,000) inhabitants. That its said charter, on the date last above referred to, contained, and has ever since contained, the following provisions, among others, which said provisions were on said date, and thence hitherto, in full force and effect as part of the charter of the said city, to wit:

"Section. 1. That all the inhabitants of the city of San Antonio are hereby constituted a body corporate and politic and shall have power * * * (4) to make all contracts and do all other acts in relation to the property and concerns of the city, necessary to the exercise of its corporate and administrative powers."

"Sec. 43. To borrow money on the credit of the city and issue bonds therefor to an amount not to exceed $50,000.00, for street improvements; * * * provided, that no debt shall be contracted for the payment whereof such bonds are issued (except the sidewalk bonds) until such bonds shall have been disposed of and the proceeds thereof paid into the city treasury; and when any bonds are issued by the city, a fund shall be provided to pay the interest and two per cent. per annum on the principal as a sinking fund to redeem the bonds, which fund shall not be diverted or drawn for any other purpose, and the city treasurer shall honor no draft drawn on said fund, except to pay the interest or redeem the bonds for which it was provided; and for the payment of such loan to levy a special tax, over and above the general tax allowed by this act. * * * The sinking fund for the redemption of any loan or debt, to be invested as fast as the same accumulates, in United States interest bearing bonds, bonds of the state of Texas, or in city bonds. and such bonds and interest of such bonds to be reinvested and to be sold when necessary, to pay debts or loans. * * *

"Sec. 44. To provide by ordinance, special funds for special purposes, and to make same disbursable only for the purpose for which the fund was created.

"Sec. 45. To appropriate and provide for the payment of the debts and expenses of the city and to issue refunding bonds for the purpose of redeeming bonds bearing a higher rate of interest, or paying matured bonds."

"Sec. 60. To establish, erect, construct, regulate and keep in repair bridges, culverts and sewers, sidewalks and cross-ways, and to regulate the construction and use of same."

"Sec. 172. The city council shall have power within the city, by ordinance, to annually levy and collect taxes for general purposes, not exceeding one per cent. on the assessed value of all real and personal estate and property in the city, including all money loaned therein at interest, although the owners thereof may be nonresidents."

"Sec. 174. To levy and collect special tax for special purposes, provided such special tax shall not exceed one per cent. on the property taxed annually."

"Sec. 219. All ordinances of the city, when printed and published. by authority of the city council, shall be admitted and received in all the courts and places, without further proof."

"Sec. 233. Lands, houses, moneys, debts due the city, and personal and real property and assets of every description belonging to the city, shall be exempt from execution and sale, but the city shall make provision, by taxation or otherwise, for the payment of any and all indebtedness due by the city."

"Sec. 253. This act shall be deemed a public act and may be read in evidence, without proof, and judicial notice shall be taken thereof in all courts and places."

Third. That said city has never exceeded in its tax levy for general pur- poses the said one per cent. on the assessed value of all real and personal estate and property in the city, specified in said section 172, and has never exceeded in its tax levy for special purposes said one per cent. on the prop- erty taxed annually, as above referred to in section 174.

Fourth. That on said 1st day of November, 1890, and thence hitherto, the San Antonio river, the San Pedro creek, and various irrigation ditches ran through the corporate limits of said city, crossing its public streets and alleys at various points and places, and necessitating, on the part of the city, for the benefit of its inhabitants, the erection of bridges over and across said creek, said river and said irrigation ditches at various places within said city as parts of its streets, and particularly at a point in said city where Crockett street extends across the San Antonio river, and that the cost of the erection and maintenance of such bridges across said streams, and par- ticularly across the San Antonio river at the point above referred to, was on said 1st day of November, 1890, and thence hitherto, one of the neces- sary current expenses of said city, for which said city was fully authorized and empowered by the said provisions of its charter to annually levy and collect a tax to pay.

Fifth. Plaintiff further avers that heretofore, to wit, on or about the ———— day of ————, 1890, the defendant, being desirous of erecting an iron bridge across the San Antonio river, where Convent street crosses said river, by ordinance duly passed by the city council, directed the mayor of said city to advertise for bids for the erection and construction of said bridge,— bids to be solicited for the iron superstructure and for the masonry sep- arate. That in pursuance of said ordinance, and in obedience thereto, said mayor of said city gave public notice to all parties to make bids for said work; reserving, however, to said city, the right to reject any and all bids, and requiring that said bids should be submitted, sealed, at the office of the city clerk, on or before Saturday, October 4, 1890, at 12 o'clock m. That plaintiff herein submitted the following bid or proposition: "We, the un- dersigned, agree to erect, and put in condition for travel, the superstructure of an iron bridge, of 100-foot span, over the San Antonio river, at Convent street crossing, to be a duplicate of Crockett street bridge, in the county of Bexar, state of Texas, in accordance with the attached specifications, for the sum of thirteen thousand dollars ($13,000.00)." That thereafter, by or- dinance duly passed by the city council of said city, said bid was duly ac- cepted by said city, and, by ordinance duly passed, the mayor of said city was directed to enter into a contract with plaintiff for the erection of the iron superstructure of said bridge, and that in conformity with said or- dinance, on the 12th day of November, 1890, plaintiff and defendant entered into a contract in writing, in substance as follows, to wit:

### "The State of Texas, County of Bexar.

"This agreement, made and entered into this 12th day of November, A. D. 1890, by and between the Berlin Iron Bridge Company, bridge builders, of. East Berlin, state of Connecticut, parties of the first part, and the city of San Antonio, of the county of Bexar, State of Texas, parties of the second part, witnesseth: That the said parties of the first part hereby agree to

furnish and erect complete, ready for travel, the superstructure of a wrought iron and steel truss bridge (98) ninety-eight feet on centers, with a roadway 26 feet, and (2) two walks of (6) six feet each, at Convent street across the San Antonio river in said county, at the site designated by the city engineer, said bridge to be a duplicate of Crockett street bridge, which is now being built, and according to the plans and specifications hereunto attached, which are made a part of this contract. And the said parties of the first part hereby agree to have said structure completed and ready for inspection on or before the thirtieth day of March, A. D. 1891, allowing a reasonable amount of time in case of unavoidable delays in shipping, by reason of high water, or accidents in construction. And the parties of the second part agree to have the abutments for said bridge completed by the first day of January, A. D. 1891. But in case said abutments are not finished in the specified time, and the parties of the first part have delivered the material for said bridge at site of same, then the parties of the second part shall pay the parties of the first part fifty per cent. of the contract price. And in consideration of the above presents the said parties of the second part contract and agree to pay the said parties of the first part the sum of thirteen thousand ($13,000.00) dollars, payable as follows: The sum of six thousand five hundred dollars ($6,500.00) on the delivery of the iron material at the site of the bridge on Convent street, San Antonio, Texas, and the remainder shall be paid on the completion and acceptance of the bridge. It is understood and agreed that the party of the first part is to have the use of the steam roller belonging to the city, in placing the concrete on roadway of said bridge, free of cost. This contract signed in duplicate. In witness whereof, the said parties do hereunto affix their seals and signatures the day and year first above written.

"[Seal.]               City of San Antonio,
"[Seal.]                  By Chs. Guerguin, Acting Mayor.
"[Seal.]                  The Berlin Iron Bridge Co.,
                         "By Wm. Payson, Agent."

Sixth. That thereafter the city directed that the bridge described in the contract hereinbefore fully set out should be erected on Crockett street, instead of on Convent street, as in said contract specified, and plaintiff agreed to do same under said contract in writing above set forth, and for the consideration therein specified. And said city agreed that said bridge should be erected by plaintiff on said Convent street, under the contract hereinbefore set out, and that said city would pay for the same the consideration stipulated in said contract.

Seventh. Plaintiff avers that it erected said bridge in accordance with said contract, and that upon the 5th day of June, 1892, same was duly received and accepted by the city engineer of said city, after having been thoroughly inspected and tested, and that thereafter, on the 23d day of June, 1892. said bridge was accepted by said city, and has by it been used and maintained ever since, and is still held, maintained, and being used by said city.

Eighth. That prior to the execution of said contract, and with a view of raising a fund necessary to pay for the erection of said bridge and other bridges, the said defendant, under the authority conferred upon it by its charter to borrow money and issue bonds therefor for street improvements, executed and issued its certain bridge bonds to the amount of fifty thousand dollars, which bonds were by it sold prior to the time when said contract was entered into, and the cash received therefor, of which said cash the sum of fifteen thousand dollars ($15,000) was put into the treasury of said city, as a special fund to be applied to the payment of plaintiff herein for the erection of the above-specified bridge, to the full extent of said contract price, and which said fund was in the treasury of the city of San Antonio, defendant herein, as a special fund for said purpose, when said contract was entered into, and had been specially applied and appropriated by said city to the payment of said contract price, in accordance with the stipulations of said contract, and which said fund said city, under its charter, could not apply to any other purpose except the payment of said contract price of

said bridge; and said fund was in said city treasury for said purpose at the time said bridge was completed and accepted by said city, as heretofore alleged, and which said sum is still in the treasury of said city as a special fund to be applied to the payment of the contract price of said bridge, due plaintiff, in accordance with the terms of said contract.

Ninth. That, by reason of the premises, defendant became bound and promised to pay to plaintiff the said sum of thirteen thousand dollars ($13,-000), as in said contract specified, with six per cent. per annum interest on $6,500 thereof, from the 1st day of February, 1891, upon which date the iron, etc., specified in said contract, was duly delivered to said city, and with six per cent. per annum on the balance thereof from said 23d day of June, 1892, but, though often requested, has failed and refused to pay same, or any part thereof, except the sum of $6,500 paid upon delivery of said iron as in said contract specified. Premises considered, plaintiff prays for process as the law directs, and, upon final trial, it have judgment against defendant for the full amount sued for, to wit, $6,500, together with interest thereon at six per cent. per annum from the 23d day of June, 1892.

Tenth. Plaintiff further avers that in the event the court should hold that the contract hereinabove specified is not legal and binding upon said city, then it says that, at the special instance and request of defendant, it sold and delivered to defendant, and erected for defendant, the iron super-structure of the bridge across the San Antonio river, where Crockett street crosses said river in said city, which said request was made by ordinance duly passed by the city council of said city on the 20th day of October, 1890, and that the said superstructure of said bridge, after it was so erected, was, to wit, on the 23d day of June, 1892, accepted by said city, and said city immediately went into possession, use, and occupation of same, and is still using, occupying, and enjoying same. That the reasonable value of said superstructure, as delivered, laid, and erected for said city, was the sum of $13,000, and that by reason of the premises the city became bound and obligated and promised to pay plaintiff, upon the delivery of said super-structure, the sum of $13,000. That said city, on or about the 1st day of March, 1892, paid to plaintiff, in part payment of said bridge, the sum of $6,500, and that the balance remaining due, to wit the sum of $6,500, is still due and unpaid, together with legal interest thereon, from the 23d day of June, 1892; and, should the court hold that plaintiff is not entitled to re-cover on the contract herein sued upon, then plaintiff prays for judgment against the said city for the value of said bridge still remaining unpaid, as above shown, with legal interest thereon, as above claimed.

Defendant demurred to and answered the petition, by its amended answer, as follows:

First, that it excepts to plaintiff's petition, and says the same is insufficient in law to require further answer from this defendant; and of this exception it prays the judgment of the court.

Specially excepting, this defendant says:

(1) That the petition of the plaintiff does not show that the plaintiff, being an incorporated company, has filed its charter to do business in the state of Texas, as is required by the laws of this state.

(2) That it does not appear from said contract sued upon by plaintiff, or from plaintiff's petition, that this defendant was authorized by its charter or laws to enter into a contract, or to contract for a debt, for the purpose of building bridges within the city of San Antonio.

(3) Because it does not appear from plaintiff's petition that, at the time of the issuing of the bonds specified in paragraph 6 of plaintiff's petition, that provision was made for levying and collecting a sufficient tax to pay the interest thereon, and provide at least two per cent. as a sinking fund, as is required by the constitution and laws of the state of Texas, and by the charter of defendant city.

(4) Because it does not appear from plaintiff's petition that at the time of the execution of the contract mentioned in plaintiff's petition, or at the time said contract was authorized by defendant city, or at the time the debt created by defendant city for the erection of the bridges men-

tioned in plaintiff's petition, that provision was made by this defendant to levy and annually collect a sufficient tax to pay the interest on said debt, and provide at least two per cent. as a sinking fund, as was required by the constitution and laws of this state, and by the charter of this defendant city.

(5) It does not appear from plaintiff's petition why, in the event of the plaintiff, from any cause, failing to recover on the contract sued upon, that this plaintiff should, in this suit, be permitted to recover the bridges described in plaintiff's petition, and be permitted to remove the same.

And of these exceptions the defendant prays the judgment of the court, and that it be dimissed, with its costs.

Further answering, this defendant denies, all and singular, the allegations in plaintiff's petition contained, and of this defendant puts itself upon the country.

Further answering, this defendant says that if there was any contract made between plaintiff and defendant for the construction of the bridges, as alleged in plaintiff's petition, that said contract was illegal, and not binding upon this defendant, because said contract was obtained by the plaintiff by fraud, in this: That the said plaintiff, by a combination with other bridge companies, prevented and paid said other bridge companies from bidding for the erection and construction of said bridges, and that the said plaintiff did pay to other bridge companies, and to divers other persons, firms, and corporations, large sums of money, to prevent such other bridge companies, persons, firms, and corporations from bidding for the construction of the bridges for this defendant, and that the payment of such sums by this plaintiff did prevent such other companies, firms, and corporations from bidding for the erection of the bridges aforesaid. Further answering, defendant says that by reason of such combination as aforesaid this defendant was compelled to pay this plaintiff a greater sum of money for the construction of such bridges than said bridges were reasonably worth; that by reason of the combination aforesaid this defendant city has already paid to this plaintiff the sum of ten thousand dollars more for the construction of the bridges aforesaid than would have been paid had such combination aforesaid not been made. Wherefore, defendant pleads in offset against this plaintiff the said sum of ten thousand dollars for damages sustained by this defendant by reason of the fraud practiced upon this defendant by this plaintiff, as above mentioned.

Further answering, this defendant particularly denies that prior to the execution of the contract mentioned in plaintiff's petition, and with a view to raising the fund necessary to pay for the erection of said bridge, or other bridges, the defendant city executed and issued its certain bridge bonds, which bonds were by it sold, and cash sufficient received therefor to more than pay for the bridges above specified. But this defendant says that at no time, prior or since the execution of the contract mentioned in plaintiff's petition, has defendant city issued any bridge bonds upon which defendant city is liable, and says that, if there are any outstanding bridge bonds issued by this defendant city, they were issued illegally, without authority of law, and at the time such bonds were issued no provision was made for the levying and collecting of a sufficient tax to pay the interest thereon, and provide at least two per cent. as a sinking fund, as is required by the constitution and laws of the state of Texas, and by the charter and ordinances of defendant city. Wherefore, this defendant prays for its judgment for damages in the sum of ten thousand dollars over and against the plaintiff, for costs, and for general relief.

Plaintiff demurred and replied to the amended answer by a supplemental petition, containing general and special exceptions thereto.

Denman & Franklin, for plaintiff.

A. Lewy, for defendant.

MAXEY, District Judge. My conclusions upon the questions arising on demurrer are as follows:

1. The contract entered into between the plaintiff and defendant on the 12th day of November, 1890, for the erection of the superstructure of a wrought-iron bridge across the San Antonio river, is invalid, as being in contravention of the plain provisions of the constitution. The contract price of the superstructure was $13,000, one-half to be paid on the delivery of the iron material at the site of the bridge on Crockett street, and the remainder on the completion and acceptance of the bridge, which was on the 23d day of June, 1892. At the time of the execution of the contract, no provision was made for the assessment and collection of a tax to pay the interest on the debt thus created, and provide a sinking fund, as required by the organic law. Section 5 of article 11 of the state constitution provides that:

"No debt shall ever at any time be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon, and to create a sinking fund of at least 2 per cent. thereon."

Section 7 of the same article contains the more emphatic declaration:

"But no debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon, and to provide at least two per cent. as a sinking fund."

It is said by Justice Gaines in City of Terrell v. Dessaint, 71 Tex. 773, 9 S. W. 593, that:

"The language is general and unqualified, and we find nothing in the context to indicate that the framers of the constitution did not mean precisely what is said; that is, that no city should create any debt without providing, by taxation, for the payment of the sinking fund and interest."

See, also, Biddle v. City of Terrell, 82 Tex. 335, 18 S. W. 691.

The same may be said of the case now before the court. But the plaintiff, by its counsel, insists that it was not necessary for the city to provide for the payment of interest and the creation of a sinking fund, in reference to the debt in question, because it is averred that bridge bonds had been sold by the city, and the proceeds thereof placed in the city treasury, to secure the erection of the bridge which the plaintiff contracted to build. It is true that section 43 of the charter of the city authorizes the city to borrow money on its credit, and issue bonds therefor, to an amount not to exceed $50,000, for street improvements, and it is further provided by said section as follows:

"That no debt shall be contracted, for the payment whereof such bonds are issued (except the side-walks bonds) until such bonds shall have been disposed of, and the proceeds thereof paid into the city treasury, and when any bonds are issued by the city, a fund shall be provided to pay the interest and two per cent. per annum on the principal as a sinking fund to redeem the bonds, which fund shall not be diverted or drawn for any other purpose, and the city treasurer shall honor no draft drawn on said fund except to pay the interest or to redeem the bonds for which it was provided; and for the payment of such loan to levy a special tax over and above the general tax allowed by this act."

Without considering the question whether the issuance of bonds denominated "bridge bonds," would be a compliance with the charter provision authorizing the issuance of "street improvement bonds," it is sufficient to say that by the imperative mandate of the constitution, which rises superior to all charter provisions, "no debt" shall be created by any city except in the manner therein indicated. The method of creating debts, pointed out by the constitution, should be followed; otherwise, the debts are invalid, and not enforceable against the municipality. Where the meaning of constitutional provisions is plain and obvious, it is the duty of courts to give effect to such meaning, without placing upon the words used a forced construction, and one not intended by the framers of the instrument. Upon this point it is said by Justice Lamar in the case of Lake Co. v. Rollins, 130 U. S. 670, 671, 9 Sup. Ct. 651, that:

"We are unable to adopt the constructive interpolations ingeniously offered by counsel for defendant in error. Why not assume that the framers of the constitution, and the people who voted it into existence, meant exactly what it says? At the first glance, its reading produces no impression of doubt as to the meaning. It seems all sufficiently plain, and in such cases there is a well-settled rule which we must observe. The object of construction, applied to a constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself; and, when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument. To get at the thought or meaning expressed in a statute, a contract, or a constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the legislature have the right to add to it or take from it. Newell v. People, 7 N. Y. 9, 97; Hills v. Chicago, 60 Ill. 86; Denn v. Reid, 10 Pet. 524; Leonard v. Wiseman, 31 Md. 201, 204; People v. Potter, 47 N. Y. 375; Cooley, Const. Lim. 57; Story. Const. par. 400; Beardstown v. Virginia, 76 Ill. 34. So, also, where a law is expressed in plain and unambiguous terms, whether those terms are general or limited, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. U. S. v. Fisher, 2 Cranch, 358, 399; Doggett v. Railroad Co., 99 U. S. 72. There is even stronger reason for adhering to this rule in the case of a constitution than in that of a statute, since the latter is passed by a deliberative body of small numbers, a large proportion of whose members are more or less conversant with the niceties of construction and discrimination, and fuller opportunity exists for attention and revision of such a character, while constitutions, although framed by conventions, are yet created by the votes of the entire body of electors in a state, the most of whom are little disposed, even if they were able, to engage in such refinements. The simplest and most obvious interpretation of a constitution, if in itself sensible, is the most likely to be that meant by the people in its adoption. Such considerations give weight to that line of remark of which People v. Purdy, 2 Hill. 31, 36, affords an example. There, Bronson, J., commenting upon the danger of departing from the import and meaning of the language used to express the intent, and hunting after probable meanings not clearly embraced in that language, says: 'In this way the constitution is made to mean one thing by one man and something else by another, until in the end it is in danger of being rendered a mere dead letter, and that, too, where the language is so plain and explicit that it is impossible to make it mean more than one thing unless we lose sight of the instrument itself, and roam at large in the boundless fields of speculation.' "

Nor can the court concur with counsel in the position assumed that the debt created by the contract of the parties was a current expense of the city, payable out of the current revenues. I do not regard it as a debt of that character, and hence it does not come within the principle announced by the supreme court in the case of City of Corpus Christi v. Woessner, 58 Tex. 462. See Biddle v. City of Terrell, supra; City of Terrell v. Dessaint, supra; Bell v. Live Stock Co. (Tex.) 11 S. W. 344.

2. Counsel for the plaintiff further contends that if the express contract of the parties be held void the plaintiff should, nevertheless, be entitled to recover from the city the value of the bridge, as upon an implied contract. The court is unable to appreciate the force of this argument. The provisions of the constitution above referred to apply equally to express and implied contracts. Whether the contract be of the one character or the other, the city must provide for the interest and sinking fund to meet the debt at maturity, in the manner indicated by the constitution. Whether the agreement between the parties be express or implied, it is nevertheless a contract, and the city is prohibited from creating a debt evidenced by such contract, unless the method pointed out by the constitution is pursued. See City of Bryan v. Page, 51 Tex. 532. In the case last cited, at page 535, it is said by the supreme court of this state (Justice Gould delivering the opinion) that "the law never implies an obligation to do that which it forbids the party to agree to do." The pleadings in this case show that the plaintiff has constructed a bridge, which the defendant is now using and enjoying, and for which, upon principles of fair dealing, the plaintiff should be paid. But that aspect of the case cannot be considered by the court; and it may be here remarked, as was said by the supreme court in the case of Buchanan v. Litchfield, 102 U. S. 293:

"Our attention is called by counsel to the exceeding hardship of this case upon those whose money, it is alleged, has supplied the city of Litchfield with a system of waterworks, the benefits of which are daily enjoyed by its inhabitants. The defense is characterized as fraudulent and dishonest. Waiving all considerations of the case in its moral aspects, it is only necessary to say that the settled principles of law cannot, with safety to the public, be disregarded in order to remedy the hardships of special cases."

In accordance with the foregoing views, the general demurrer of the defendant, and its third, fourth, and sixth special exceptions, are sustained, and its first and second special exceptions are overruled. The defendant's fifth special exception is also overruled, because it does not appear from the petition that plaintiff seeks to recover and remove the bridge. Looking to the answer of defendant, it presents no defense to the suit, and without discussion the general demurrer and special exceptions of the plaintiff interposed to the answer will be sustained.

Ordered accordingly.