# Richmond

EDNA C. LEONARD V. TOWN OF WAYNESBORO.

November 11, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*G. H. Branaman,* for the appellant.

*W. E. Moore,* for the appellee.

GREGORY, J., delivered the opinion of the court.

Mrs. Edna C. Leonard filed her bill in equity against the town of Waynesboro for the purpose of having the court establish the true corporate line of the town in order that she might have judicially ascertained whether her property lies within or without its corporate limits. Incidentally, she asked that if her property is within the town she be reimbursed for a water line she constructed to enable her to obtain from the town a supply of water. The court established the true corporate line and determined that her property lies entirely within the limits of the town but by a separate decree declined to allow her to be reimbursed for the water line she had constructed. Mrs. Leonard is not appealing from the decree which established the corporate line of the town. She complains only of the decree which denied her claim for compensation for the water line. This is the sole assignment of error.

The facts material to a decision of the case are without serious dispute. The property of Mrs. Leonard is and has been wholly within the corporate limits of Waynesboro and it lies within the Basic section of said town. From 1890 to 1923, it was situated in Basic and after the consolidation of Basic and Waynesboro in 1923 it became a part of Waynesboro. However, through error the property was treated by the authorities of both the town and the county of Augusta as being without the limits of the town and lying wholly in the county. The town did not assess the property. It refused to supply it with water and when the appellant constructed her own line she was charged by the town an increased rate because the authorities thought her property was outside of the town. Augusta county, through its officers, assessed the property and the appellant paid the taxes thereon to the county treasurer.

A new corporate charter was granted the town of Waynesboro by the General Assembly in 1928 (Acts 1928, ch. 482), the government of the town was changed and a town manager form instituted. A town manager was selected

and in that year he first questioned the location of the appellant's property—that is, whether it was within or without the town.

In 1929, the town authorities assessed the property for municipal taxes, but the town continued to charge her the increased water rate just as though the property were in the county. This inconsistency has never been explained. From 1929 to 1932 the confusion continued but the town manager refused to have the boundary judicially determined, notwithstanding the fact that the appellant was anxious to have the matter settled and had urged the manager to initiate the proper proceeding for that purpose. She was uncertain to whom she should pay the taxes, what amount she should pay for water and where she had the right to exercise her voting privileges. In these circumstances, she refused to pay the water charges and for this default she was proceeded against upon a warrant before the trial justice. The appellant then instituted the present suit in the Circuit Court of Augusta county, the primary purpose of which was to establish the boundary line, and by a decree it was determined that she was a resident of Waynesboro and her property was located within the limits of the town. No appeal was noted from that decree.

By another decree the cause was referred to a commissioner in chancery who was directed to ascertain and report the amount of taxes, water rents, penalties and interest due by the appellant to the town, and whether the town was indebted to the appellant for the cost of the water line she had laid and which was being used by the town as a part of its water system. The commissioner reported upon these matters and allowed the appellant $476 as compensation for the water line. This part of the report was excepted to by the town. The court sustained the exception and refused to allow the appellant any amount for the water line, and, as indicated, the correctness of this action of the court is the sole question to be determined.

The evidence discloses that in 1918 the town operated its own water plant. The appellant then applied to the

town for water service but her application was declined because her family would be the only user and the business would be so unprofitable that the town would not be justified in making the extension and incurring the expense incident to it. However, she was given permission to construct her own line, which she did at her own expense, and by permission of the town she tapped its water system and became one of its water consumers.

The appellant, from 1918 to 1926, continued ·to use the water and paid the increased water rent. The three-fourths inch pipe she had laid in 1918 became insufficient to take care of her water needs, and in order to supply water to her land which she intended to subdivide, she applied again in 1926 to the town to have the pipe enlarged. The town again refused, but allowed her to rebuild the line at her own expense. She rebuilt the line of two-inch pipe, connected it with the town water system and began the use of water through the rebuilt line. The cost of this line was $476, which she paid.

In 1928 and 1929 several houses were built upon the land formerly belonging to the appellant but which had at that time been subdivided into lots. Some of the lots had been sold and built upon by the purchasers. They had their homes connected with the pipe line built by the appellant, and the agents of the town made the connections without the express consent of the appellant but with her knowledge. From that time on the town has sold water to many consumers through the two-inch pipe laid by the appellant, collected water rents from them in an amount double the cost of the pipe line and has exercised all of the various elements of ownership over the line. In fact the town in its petition alleges that it now has title to the pipe line.

The appellee placed great reliance upon the case of *Danville* v. *Forest Hills Development Corporation*, 165 Va. 425, 182 S. E. 548, and the trial court held that the case at bar was controlled by it. In the *Danville Case* the development company sought to recover of the city for the improvements it had installed on its property which adjoined the city but

lay wholly outside of it, after the city had by annexation proceedings extended its corporate lines and embraced this land within the city lines.

The court, comprised of three judges, in hearing the annexation case declined to consider the claim of the development company for the improvements it had made. From this adverse ruling the owners of the subdivision applied to this court for an appeal but the appeal was refused. Later an action at law was instituted and the case was tried by a jury in the lower court and a verdict was rendered in favor of the city. The court set the verdict aside and entered judgment for the development company. The city obtained a writ of error to this court and we reversed the judgment of the lower court, holding that the development company was not entitled to be paid by the city for the improvements, first, because the improvements were made for the benefit of those who were and would be lot owners, whose lots were then outside the city limits, and the cost of the improvements had been absorbed in the enhanced sale value of the lots and that the company had no such right of property in the improvements at the time of the annexation as entitled it to damages for their use; and, second, because the General Assembly, in annexation cases, permitted only owners of subdivisions which are annexed by cities of more than 100,000 inhabitants to recover of the city the value of certain improvements under certain conditions. (See Code, sec. 5222k). No such right was granted to such owners where their property was annexed to cities of less than 100,000 inhabitants, Danville being in that class. (See Code, sec. 5222t).

In the case at bar the land in question, as we have seen, was not beyond the city limits but was wholly within the city. No annexation was necessary to bring it in and therefore the annexation statutes have no bearing.

We think the present case must be decided upon the principles of implied contract. It certainly cannot be decided under the annexation statutes for no annexation took place,

nor under the principle of dedication for no dedication was made.

The line became a part of the town water system and was used exclusively by the town in its water business. It produced valuable water rentals and now accommodates many families. We think the town should pay for it.

In *Abbott Realty Company* v. *City of Charlotte* (1930) 198 N. C. 564, 152 S. E. 686, the North Carolina court had before it a case quite similar to the one at bar. There the controversy arose over a sewer line. The realty company was the owner of certain lots situate wholly within the corporate limits of the city of Charlotte. They fronted on the streets of the city and were suitable for residential and business purposes and had been developed by the realty company, but they were not accommodated by municipal sewer lines. The realty company for the purpose of enhancing the value of the lots and to render them more salable, caused sewers to be laid to accommodate them and the said sewers were connected to the city sewer system. The realty company paid the cost of the sewers and upon the refusal of the city to reimburse it, it brought this action against the city.

It developed that the city had not entered into an express agreement to pay for the sewer line; that the statutory formalities had not been observed; that no contract for such purpose could be valid unless made by the board of commissioners or in pursuance of an ordinance; and that there was no such authorization. The court held that the city could not be held liable to the realty company upon a contract and that there could be no ratification of a contract which the municipality had no power to make. But in concluding the opinion the court held that the realty company was entitled to recover of the city upon a *quantum meruit* for the reasonable and just value of the sewers because the evidence showed that the city had taken them over and incorporated them into its sewer system.

In *Contoocook Fire Precinct* v. *Town of Hopkinton* (1902) 71 N. H. 574, 53 A. 797, a sewer was laid within the

corporate limits of the town by the plaintiff corporation but without the authority of the town to do so. Later the town, through its agents, connected this line with its own municipal sewer system. The court held that the town having made these connections and having treated this sewer line as its own property, was liable to pay reasonable compensation for the construction of the line.

In *Mount Jackson* v. *Nelson,* 151 Va. 396, 145 S. E. 355, 358, Mr. Justice Holt speaking for the court said: "If this entire contract were *ultra vires,* plaintiffs could still recover on a *quantum meruit.* The town has·retained and controls this main designed for the benefit of consumers generally and through which they can deliver water at a profit. In such circumstances the obligation to pay is as complete as it would be to pay for a right of way bought and held for this pipe. No one would claim that it could keep such an easement and not pay for it. *Citizens' Central National Bank* v. *Appleton,* 216 U. S. 196, 30 S. Ct. 364, 54 L. Ed. 443; *Tone* v. *Tillamock City,* 58 Ore. 382, 114 P. [938], 939; *Norton Grocery Company* v. *Bank of Abingdon, ante* [151 Va.], page 195, 144 S. E. 501, decided September 20, 1928; Elliott on Contracts, section 559."

The facts in that case were unlike those in the present case but the principle applied there is applicable here, viz: that where a town takes over and controls a water line built by others and uses it for the benefit of the town and consumers generally, and through it delivers water for a profit, it is obligated to pay, on a *quantum meruit,* those who constructed the line.

When a municipality enters into the business of operating a water plant it is acting in its proprietary, or *quasi* private, capacity for the private advantage of its inhabitants and of the municipality itself. It exercises business functions rather than those governmental in their nature. In the exercise of those functions the municipality is governed largely by the same rules as those applicable to private corporations or individuals engaged in the same business. Transactions touching such business should re-

ceive the same construction by the courts as like ones between private corporations or individuals. *Maney* v. *Oklahoma City*, 150 Okla. 77, 300 P. 642, 76 A. L. R. 258.

The principle under which a municipality is held liable upon an implied contract for labor and materials is nowhere better stated than by the Supreme Court of Appeals of our sister State, West Virginia. In *Cade* v. *City of Belington*, 82 W. Va. 613, 96 S. E. 1053, the court used this language in a syllabus prepared by it: "As a general rule, a municipal corporation is not bound by a contract made without corporate action by the council, duly assembled, manifested by an order entered of record in the minute book containing a notation of its proceedings.

"But if the municipality has power to contract therefor by express contract, and the contract is not against public policy, and there are no statutory or charter provisions limiting the mode of execution of a like express contract, it will be liable on an implied contract where, with the knowledge and consent, express or implied, of the members of the council, it has received benefits rendered at the instance and request of its duly authorized agents acting for and on its behalf, either in the absence of any contract or where the express contract is invalid because of mere irregularities."

In 84 A. L. R. 937 is found an exhaustive annotation on the liability of a municipality upon an implied contract, and the author of the annotation states the general rule to be "well settled in most jurisdictions that a municipality * * * may become obligated upon implied contract to pay the reasonable value of benefits accepted or appropriated by it as to which it has the general power to contract * * *. The doctrine of implied municipal liability has been said to apply to all cases where money or other property of a party is received under such circumstances that the general law, independently of the express contract, implies an obligation upon the city to do justice with respect to the same."

In an earlier note in 27 L. R. A. (N. S.) 1117, there appears a statement which is partially contrary to that set forth in the later annotation in 84 A. L. R. 937, *supra*, but upon an examination of the available cases cited to support the statement, we find that they are not contrary, in the main, to our views and holding in the case at bar. The facts of those cases which express the contrary view are so unlike this one that they are distinguishable on that ground. For instance, in the early case of *Dolloff* v. *Ayer* (1895) 162 Mass. 569, 39 N. E. 191, which is cited as supporting the contrary principle, and which is relied upon in the brief, the plaintiff was the owner of a water hose which had, *without the knowledge* of the agents of the town, become commingled with the hose belonging to the town and which could not be identified, and he sought to recover its value of the town. The court held that he could recover neither upon tort nor upon an implied contract. He could not recover upon the implied contract because the town agents had no knowledge of the use of the hose and were, therefore, ignorant of any benefit the town was receiving therefrom.

The distinction between that case and the one at bar is so obvious that it is unnecessary to point it out.

See also, 19 R. C. L. page 1060, where the principle controlling liability of municipalities upon implied contracts is clearly and succinctly stated.

In *Stansbury* v. *Richmond*, 116 Va. 205, 81 S. E. 26, 51 L. R. A. (N. S.) 984, it was held that the determination of the public improvements to be made by a municipality was a legislative function. We do not now controvert that principle nor do we intend that anything in this opinion is to impinge upon it. Our conclusion in the case at bar is limited to the single proposition that the appellant is entitled to compensation for the pipe line under an implied contract. The particular facts justify that conclusion. They are at variance with those in the *Stansbury Case* and for that reason alone it may be distinguished.

The decree should be reversed and a final decree now entered in favor of the appellant for $476, the cost of the water line, together with her proper costs expended in this behalf.

*Reversed.*