**SCOFIELD ENGINEERING CO. v. CITY OF DANVILLE.**

No. 4800.

Circuit Court of Appeals, Fourth Circuit.

March 28, 1942.

Waldo G. Miles and Hugh T. Williams, both of Danville, Va. (John W. Carter, Jr., and Mary H. Williams, both of Danville, Va., on the brief), for appellant.

E. Walton Brown, of Danville, Va., for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from the judgment of the District Court of the United States for the Western District of Virginia. A civil action was instituted by Scofield Engineering Company, a Pennsylvania corporation, against the City of Danville, a municipal corporation of the State of Virginia. The parties are hereinafter referred to as plaintiff and defendant as they appeared in the lower court.

On motion for judgment on the pleadings, Judge Barksdale, in the District Court, entered judgment on the plaintiff's claim in favor of the defendant and on the defendant's counter-claim in favor of the plaintiff. We think Judge Barksdale was eminently correct in each of these decisions, so we affirm the judgment of the District Court.

We adopt, as fair and accurate, the statement of facts contained in the opinion of Judge Barksdale [35 F.Supp. 668, 669]:

"In the spring of 1933, the City of Danville desired to construct a hydro-electric power plant at the Pinnacles of the Dan in Patrick County, Virginia, to be operated by the municipality for the purpose of supplying electric power to the City of Danville, and its citizens. The City contemplated financing the project by obtaining a loan from the Reconstruction Finance Corporation and issuing its bonds for the balance of the money required. Plaintiff, a Pennsylvania corporation engaged in engineering, was invited by the City to prepare the necessary engineering data for filing an application for a loan from the Reconstruction Finance Corporation for this project, the City officials representing to the plaintiff that in the event the plant was constructed, plaintiff would be employed as consulting engineers for the project. After some negotiations, an agreement was reached between the plaintiff and defendant, which was embodied in a resolution adopted by the Council of the City of Danville on May 10, 1933, which in effect recites an agreement to pay the plaintiff the sum of $3,000 for the preparation of the necessary engineering data for the City's loan application, and an employment of the plaintiff at an agreed compensation, as consulting engineers for the project 'should the proposed loan be made by the Reconstruction Finance Corporation to the City of Danville and the proposed development carried out.'

"The engineering data was obtained and formulated by the plaintiff, the City's appli-

cation was filed, first with the Reconstruction Finance Corporation, and later transferred to the Public Works Administration, the same engineering data being used and the plaintiff continuing to render engineering services in connection with the application. On January 12, 1934, the Public Works Administration approved a loan and grant to the City of Danville for this project in the sum of $3,000,000, of which 30 per cent was to be a grant, and 70 per cent a loan to be evidenced by the bonds of the City of Danville.

"It was understood by both plaintiff and defendant, at the inception of their relationship in this regard and throughout the transaction, that issuance of revenue bonds of the City of Danville was contemplated and was necessary for the financing of the project.

"The Charter of the City of Danville provides that:

"'2. Except as otherwise provided in this chapter, no bonds of the City of Danville shall be issued until the question of issuing them shall have first been submitted to the qualified voters of the city at a general or special election and shall have been approved by two-thirds of such voters voting on the question of such issue, which two-thirds shall include a majority of the qualified registered voters owning real estate in said city and voting in such election on the question of such issue. * * *'

"An Act of the General Assembly of Virginia, approved September 7, 1933 (Acts of Assembly 1933, Ex.Sess., chapter 26, page 47), to facilitate the acceptance of grants and the making of contracts with the Public Works Administration under the National Industrial Recovery Act of Congress [48 Stat. 195], provided in Section 14 that:

"'Provided, however, that in the cities of Roanoke and Danville no money shall be borrowed and no bonds issued and no indebtedness incurred hereunder until and unless the proposal so to do shall have been submitted to the qualified voters of such city at a special election and approved by a majority of the qualified voters who vote in said special election.'

\* \* \* \* \*

"On February 26, 1934, an election was held in the City of Danville, at which the proposal to accept the proposed loan and grant from the Public Works Administration, issue the City's revenue bonds in the amount necessary for the City to avail itself of the loan and grant, and construct the hydro-electric development, was submitted to the voters, and a majority of the voters who participated therein voted *against* the issuance of said bonds.

"Thereafter, the plaintiff was at all times ready, willing and able to perform engineering services for the City pursuant to its contract, but these services were not availed of, and in July, 1934 a citizens' committee procured an appropriation of $2,000 out of current revenue from the City Council and employed another engineering firm, Charles T. Main, Inc., of Boston, to investigate the situation and make recommendations. After the report of said Charles T. Main, Inc., the City renewed its application for a loan and grant, and this time received from the Public Works Administration an offer of a loan and grant of $2,750,909, of which 45 per cent was to be a grant and 55 per cent to be a loan. The proposal to accept this offer, issue the City's revenue bonds in the necessary amount and to construct the hydro-electric development, was submitted to the people at an election on October 1, 1935, at which election the proposal was approved, and thereafter the City proceeded to issue its revenue bonds, secure the 45 per cent grant from the Public Works Administration, and construct the project under the supervision of Charles T. Main, Inc., as supervising engineers.

"The plaintiff alleges that it was willing and able to act as consulting engineers in the development of the project, and that the City was bound by its contract of May 10, 1933, to avail itself of such services, and the City's failure so to do constituted a breach of contract, for which the City is liable in damages. Upon the City's refusal to pay, this suit was instituted.

"The City bases its motion for a judgment on the pleadings primarily upon the grounds:

"(1) That under the law the Council of the City of Danville had no right or power to contract to spend any portion of the avails of the contemplated loan until after the issuance of the bonds had been authorized by the voters of the City of Danville in an election as required by its Charter and the statute (Acts of Assembly 1933, Ex.Sess., c. 26, p. 47); and

"(2) That if the contract of May 10, 1933, was valid, it was conditioned upon the approval of the proposition then under con-

sideration by the voters at a special election, and that inasmuch as that proposal was disapproved by the vote of the people in the election of February 26, 1934, the occurrence of the condition precedent to the validity of the contract failed, and therefore the contract was rendered void and of no effect for all time by the failure of the proposal to carry at the election of February 26, 1934.

"The plaintiff contends that the City Council did have the power to make a contract involving the expenditure of the proceeds of the bond issue before approval of such bonds by an election, provided that such expenditure was conditioned upon subsequent approval in an election, and further that, even if the City is not liable to it upon the express contract, it is liable on a quantum meruit. upon the implied contract.

"It is conceded by counsel that the charter and statutory inhibition against the issuance of bonds is equivalent to an inhibition against incurring indebtedness, in that it was understood by both parties that this project must necessarily be financed out of the proceeds of a bond issue."

It seems quite clear that this case is controlled by the applicable law of the State of Virginia. We, accordingly, proceed to discuss the case in the light of the decisions of the highest court of Virginia, The Supreme Court of Appeals.

We agree with Judge Barksdale that, even if the validity of the contract between plaintiff and defendant be conceded, this contract was terminated and imposed no further obligations upon either party thereto when plaintiff paid to defendant the stipulated sum of $3,000 for the work of plaintiff, and when, at the election held in Danville on February 26, 1934, a clear majority of the voters who participated therein voted against the issuance of bonds to finance the project in question.

This is in line with the decision of the Supreme Court of Appeals of Virginia in Royer v. Board of County Supervisors of Albemarle County, 176 Va. 268, 10 S.E.2d 876, where the facts were very strikingly similar to the facts of the instant case. In his opinion in the Royer case, 10 S.E.2d at page 879, Judge Eggleston said:

"It is true that in 1935 the Board of Supervisors employed the plaintiff to file an application for a federal grant and agreed that, in the event the application was approved and the offer of the government to assist in financing the project was accepted by the board, the latter would pay him for preparing and furnishing the necessary plans and specifications. The application was prepared and filed and the plaintiff was paid the agreed sum of $175 for this work. But because of the lack of funds the government did not approve the application.

"Moreover, since the bond issue was not approved by the voters of the Sanitary District the board was not in a position to have accepted the grant even if its application had been approved.

"Therefore, the stated contingency upon which the plaintiff had a right to proceed with the preparation of the plans and specifications had not occurred.

"While the grant was approved in June, 1938, on the original application filed some three years previous, this might have occurred after the lapse of even a longer period. *It does not make sense to say that under these circumstances the parties remained mutually obligated so that if at any time thereafter a federal grant had been secured and accepted the board would have been bound to have employed the plaintiff and the latter would have been bound to have done the work.* [Italics ours.]

"It is clear, we think, that from the time of the refusal of the grant in 1936 until July, 1938, the plaintiff had no claim on the board and the latter had no claim on him. The original negotiations between the parties were terminated."

In the instant case, the contract provided for the absolute payment of $3,000 by defendant to the plaintiff for the preliminary work of the plaintiff. Under the doctrine of the Royer case, supra, there was to be no further work by plaintiff, no further payment by defendant unless the voters at the ensuing election favored the project in question. At this election, the vote was against the project; the defendant paid $3,000 to the plaintiff. Thus was the contract fully performed by both parties to the contract.

An even stronger ground for judgment in favor of the defendant on the plaintiff's claim lies in the fact that the contract between plaintiff and defendant was void because it was in direct contravention of the charter of the City of Danville and was in the teeth of the express prohibition of the Virginia Statute, Act of the General Assembly of Virginia, approved September 7, 1933, Acts of Assembly, 1933, Ex.Sess.,

page 47. And we think it is abundantly clear from the Virginia·cases that under such circumstances there can be no recovery on a quantum meruit.

In support of its contention for a recovery on quantum meruit, plaintiff relies heavily on Mount Jackson v. Nelson, 151 Va. 396, 145 S.E. 355, and Leonard v. Waynesboro, 169 Va. 376, 193 S.E. 503. The first case, standing by itself, might lend some support for this contention, since, in that case, Mr. Justice Holt (145 S.E. at page 358) said:

"If this entire contract were ultra vires, plaintiff could still recover on a quantum meruit. The town has retained and controls this main designed for the benefit of consumers generally and through which they can deliver water at a profit. In such circumstances, the obligation to pay is as complete as it would be to pay for a right of way bought and held for this pipe. No one would claim that it could keep such an easement and not pay for it."

But here the court was dealing with a contract neither expressly prohibited by the charter of the municipality nor directly forbidden by a state statute.

In Leonard v. Waynesboro, supra, in which recovery on quantum meruit was allowed, the contract was within the corporate powers of the municipality but it was not entered into through proper corporate action by the Council, duly assembled. But the court expressly denied that there could be any such recovery on quantum meruit if the contract in question is prohibited by statutory provisions. Said Mr. Justice Gregory, 193 S.E. at page 503, 506;

"The principle under which a municipality is held liable upon an implied contract for labor and materials is nowhere better stated than by the Supreme Court of Appeals of our sister state, West Virginia. In Cade v. City of Belington, 82 W.Va. 613, 96 S.E. 1053, the court used this language in a syllabus prepared by it: 'As a general rule, a municipal corporation is not bound by a contract made without corporate action by the council, duly assembled, manifested by an order entered of record in the minute book containing a notation of its proceedings.

" 'But if the municipality has power to contract therefor by express contract, and the contract is not against public policy, and there are no statutory or charter provisions limiting the mode of execution of a like express contract, it will be liable on an implied contract where, with the knowledge and consent, express or implied, of the members of the council, it has received benefits rendered at the instance and request of its duly authorized agents acting for and on its behalf, either in the absence of any contract or where the express contract is invalid because of mere irregularities.' " (Italics ours.)

Again, in City of Bristol v. Dominion National Bank, 153 Va. 71, 149 S.E. 632, this clear cut distinction between the two classes of contracts with municipalities was clearly recognized. Mr. Justice Holt, 149 S.E. at page 635, quoted with approval:

" 'It should be borne in mind that there is a distinction between contracts void, as violative of a statute or because offensive to public policy, and contracts which are void because in excess of corporate power—ultra vires—in respect to a recovery on the quantum meruit. This distinction is well recognized in adjudicated cases. In the latter class, where the corporation has received benefits which have been applied to authorized objects under an ultra vires contract, although no action can be had upon the contract, a recovery may be had on the quantum meruit.' City of Ensley v. J. E. Hollingsworth & Co., 170 Ala. 396, 54 So. 95, 97, 100, Ann.Cas.1912D, 652.

"In that case it was said that the plaintiff could not 'maintain an action upon the quantum meruit for work done, or upon the quantum valebat for materials furnished. The transaction itself out of which the contract springs falls under the ban of the law. It comes within the class, and upon like principles, of contracts that are expressly prohibited by statute. The illegality affects the entire transaction, and out of it no cause of action can arise.' "

And Mr. Justice Holt continued, 149 S.E. at pages 635, 636:

"But it is necessary that a tacit promise to pay may fairly be inferred from the circumstances, and the express contract set aside must have not been against public policy, and not expressly prohibited by the charter or by statute.

" 'On the other hand, it is doubtful if there are any cases which hold that when a contract is in a class expressly prohibited by charter or statute the acceptance of benefits raises an implied obligation.' McQuillin on Municipal Corporations (2d Ed.) vol. 3, p. 820.

" 'So, too, is the law well settled that where, as in the cases between these parties here under consideration, the contract upon which suit is brought is forbidden by statute, the acceptance of benefits raises no implication of an obligation. The law is not properly chargeable with the absurdity of implying an obligation to do that which it forbids.' Edison El. Co. v. Pasadena [9 Cir.], 178 F. 425, 431.

" 'Contracts violating charter or statutory requirements have been held not to form the basis of implied obligations.' Note C, 44 C.J. 139. Many cases cited."

It would thus seem clear, under these Virginia cases, that, where, as is the case here, the contract is expressly prohibited by charter and specifically forbidden by statute, there can be no recovery on quantum meruit, upon a basis of unjust enrichment or a theory of implied contract.

Again, in American-La France & Foamite Industries, Inc., v. Arlington County, 1935, 164 Va. 1, 178 S.E. 783, 784, these principles were reaffirmed and the court (178 S.E. at page 784) quoted with approval the following extract from the opinion of the Supreme Court of Iowa in Johnson County Savings Bank v. Creston, 212 Iowa 929, 231 N.W. 705, 707, 237 N.W. 507, 84 A.L.R. 926: "* * * 'municipal corporations are the creatures of the Legislature. They have such powers to contract, and only such powers, as the Legislature grants to them. When the Legislature withholds power to contract, or permits the exercise of the power in a given case only in accordance with imposed restrictions, the corporation may no more bind itself by implied contract than by the forbidden express contract. All persons dealing with a municipal corporation are charged with notice of the limitations upon its power. Those limitations may not be exceeded, defeated, evaded, or nullified under guise of implying a contract.' "

Nor do we think the views expressed in American-La France and Foamite Industries v. Arlington County, 1937, 169 Va. 1, 192 S.E. 758, in any way overrule the doctrine that we have applied to the instant case. See, also, Berlin Iron Bridge Co. v. San Antonio, C.C., 62 F. 882, A. L. Greenburg Iron Co. v. Abbeville, 5 Cir., 2 F.2d 559; City of Fort Pierce v. Scofield Engineering Co., 5 Cir., 57 F.2d 1026.

The rationale of the rule that there can be no recovery against a municipality upon a theory of quantum meruit, on a contract prohibited by statute, is thus admirably expressed in the dissenting opinion of District Judge Briggle, in Ohio Oil Co. v. Michigan City, 7 Cir., 117 F.2d 391, 394: "I am convinced that, under the Indiana statute in question and the decisions of the Indiana courts, there should be no recovery in the instant suit. The statute is plain and unambiguous and condemns as void any attempt to bind the municipality beyond the sum appropriated. Those dealing with the city in the face of such statutory law do so at their peril, and it is unimportant that the parties may not have known at the moment that the appropriation had been exhausted and may seemingly have acted in good faith. Recognition of plaintiff's right of recovery on the doctrine of quantum meruit is but a method of invalidating the statute in question. Such equities as surround plaintiff must, under the circumstances, yield to the plain statutory provisions. Moreover, there is a much broader equitable basis for denying than for permitting recovery. The statute is for the general welfare and protection of the public and particularly the taxpayers of the defendant municipality. To brush the same aside and permit recovery beyond the sums appropriated on some supposed basis of 'goods sold and delivered' or 'money had and received' leaves the public without the protection conferred by the legislature."

Compare the majority opinion in this case. And see, also, American-La France Fire Engine Co. v. Borough of Shenandoah, D. C., 30 F.Supp. 251; Id., 3 Cir., 115 F.2d 866.

It should be noted that this is not a case where services have been rendered under an illegal contract and the city has accepted the benefit thereof after the project to which they relate has been duly authorized and the city is in position to assume liability with respect thereto. Cf. Mountjoy v. Cheyenne High School Dist., 78 Colo. 162, 240 P. 464. The contract related to two matters: (1) Services to be rendered in advance of the authorization of the project, and (2) engineering services to be rendered after it was authorized. As to (1), the contract was valid, and the services rendered have been paid for in accordance with the contract. As to (2), the contract was invalid and no services have been rendered thereunder. It is alleged that the prospect of getting the 5% commission under (2) was the real reason for performing the services under (1), which are al-

948

leged to be worth more than $3,000. The answer to this is that the contract fixed the amount to be paid for services rendered under (1) at $3,000, and this amount has been paid for them. Certainly a greater sum than that fixed by contract cannot be recovered for services rendered, merely because the contract contains an unlawful provision for payment of services which are not rendered.

■ We agree further with Judge Barksdale that there is no substantial merit in the plaintiff's contention that no actual present indebtedness was created by the contract of May 10, 1933, because the contract was conditioned upon the issuance of bonds and the development of the project by the City, and that therefore the contract was not in violation of the charter and statute, and became binding on both parties upon the happening of the conditions precedent. Such a contention smacks of sophistry and would seem to be absolutely opposed to the spirit and purpose of the prohibitions in the charter and statute.

The provision against the creation of indebtedness would certainly forbid the making of a contract which would give rise to an indebtedness; and the provision that such contract be dependent upon happenings which would give it validity means merely that what was in form a contract was a mere offer which created no obligation until accepted by the city after it had authority to make such contract. The city could not, in advance of such authority, enter into even a conditional contract with respect to a matter as to which it was without power to contract at all.

■ Nor are we impressed, in the light of the large powers which a State possesses to regulate the affairs of its municipalities, by plaintiff's suggestion that the Virginia Statute, Section 14, Chapter 26, Acts of 1933, Ex.Sess., is void on the ground that this statute contravenes Section 63 or Section 64 of the Constitution of Virginia. The Statute does not fall within any of the twenty expressly mentioned classes in Section 63. This section prohibits the enactment by the general assembly (legislature) of "any local, special or private law" in any of the twenty instances definitely and specifically therein set out. Space forbids the enumeration of these twenty clauses. Yet by no stretch of the imagination can the instant Statute be brought within the purview of any or all of these clauses. And

the last sentence of Section 64 is applicable to "private corporation, association, or individual", which would not seem to include a public or municipal corporation. And there are no other provisions in Section 64 which might mitigate against the constitutionality of the instant statute. Germane, too, in this connection, is Section 117 of the Constitution of Virginia which gives the Virginia Legislature unique powers over cities and towns. We, accordingly, conclude that the Virginia Statute conforms fully to the Virginia Constitution, even though the prohibition in this statute is directed solely to "the cities of Roanoke and Danville".

In the light of what has been said about the contract between plaintiff and defendant, we think, again as did Judge Barksdale, that the counter-claim of the defendant against the plaintiff clearly falls along with the claim of the plaintiff against the defendant.

The judgment of the District Court is affirmed.

Affirmed.